## SAVAGE & DARRINGTON *vs.* WALSHE & EMANUEL.

1. Where a statute affects a community, and requires as a condition to its validity that something should be done before it goes into operation, the act has no force or effect until the thing required to be done is performed; but where a statute affects only one or more designated persons, either natural or artificial, those interested in its object may dispense with a preliminary of this character, and claim the benefit of its provisions, without requiring the performance of the condition.

2. The object of the act of February 12, 1843, "for the final settlement of the affairs of the Planters and Merchants' Bank of Mobile", was to obtain a dissolution of the Bank's charter agreeably to law; and although it provides for the institution of judicial proceedings against the Bank to obtain a judgment of forfeiture of its charter, and declares "that if no cause of forfeiture shall be found, this act shall have no force or validity," yet the Bank might dispense with the judicial proceeding by surrendering its charter and accepting the provisions of the act, and it was competent for the State, with the assent of the Bank, to resume its franchises at any time.

3. In a suit brought by a purchaser of negotiable paper at a sale of the Bank's assets, made by its trustees under the act of 1850, an allegation in the declaration that the charter was surrendered, but was continued by virtue of the provisions of the several acts for the settlement of the Bank's affairs, is not repugnant or contradictory, when construed with reference to those acts.

4. The fact that a note, taken by the trustees after the surrender of the Bank's charter, was made "negotiable and payable at said Bank", does not raise a legal presumption that it was discounted, instead of being taken in settlement of a debt due.

5. The power of sale conferred upon the trustees by the act of 1850 gave them, by necessary implication, the authority to transfer negotiable securities so

as to pass the legal title to the purchaser by their assignment, and enable him to sue in his own name.

6. The clause in the second section of the act of 1850, which requires the trustees to sell the remaining property and assets of the Bank "within thirty days from the first Monday in November next", is not mandatory, but directory merely; and therefore, a sale made after the expiration of the time specified is sufficient to pass a good title to the purchaser.

7. A plea, averring "that the charter of the Bank was not forfeited, and its corporate existence was not dissolved", is fatally defective on demurrer: the first allegation is no answer to the declaration, which alleges that "the charter was surrendered to the State," and the second is an allegation of matter of law.

8. So, a plea, averring that the trustees "were not invested with the legal ownership and control of said note, and did not make a legal transfer and endorsement of the same to the plaintiffs", is but the allegation of a legal conclusion instead of facts, and therefore demurrable.

9. The same objection applies to a plea which avers "that said Bank, at the date of said note, had no power or authority to make a contract, and that said note is null and void."

10. The genuineness of an endorsement of the note sued on can only be denied by a sworn plea.

11. The objection that an endorsement of the note sued on was read in evidence, "when it was not shown to have been made at the time alleged in the declaration", is not a reversible error, when the record shows that such proof was subsequently made.

12. Where defendant by his plea puts himself upon one issue, he thereby admits all the rest.

13. The rendition of judgment against a defendant who was not served with process, and who did not appear, is a mere clerical mistake, which may be amended on motion in the court below, and the judgment must be regarded as affecting those defendants only who were before the court; and if no motion to amend is made, the mistake furnishes no ground of reversal.

APPEAL from the Circuit Court of Clarke.

Tried before the Hon. LYMAN GIBBONS.

ASSUMPSIT by Jonathan Emanuel and Charles Walshe, as assignees of Sidney Smith and David Stodder, trustees of the Planters and Merchants' Bank of Mobile, against John B. Savage, John Darrington and James Savage, on a promissory note, of which, with the endorsement thereon, the following is a copy ;

"Macon, May 10, 1847.

"$3468 23.   Twelve months after date, we, John B. Savage, John Darrington and James Savage, jointly and severally promise to pay the Planters and Merchants' Bank of Mobile, or order, three thousand, four hundred and sixty-eight 23-100

dollars, value received; negotiable and payable at said Bank."

(Signed by the defendants.)

"For value received, we, David Stodder and Sidney Smith, trustees of the Planters and Merchants' Bank of Mobile, assign, transfer, and deliver this note (without recourse) to Charles Walshe and Jonathan Emanuel."

(Signed by said trustees.)

The suit was commenced on the 2d October, 1851. The declaration, after alleging the execution of the note, proceeds—"And plaintiffs aver, that before and at the time of the execution of said note, said Bank, as a corporation, was dissolved, and its charter surrendered to said State, and its franchise of banking so surrendered; but by virtue of the provisions of the acts of said State, approved the 13th February, 1843, for the final settlement of the affairs of said Bank, and the acts amendatory thereto, said charter was continued, and (by virtue of the provisions of said acts) said trustees were elected and appointed trustees of said Bank, and the said note (by virtue of the provisions of said acts) was transferred to the said trustees, who thereby became the holders and legal owners of said note, for the objects contemplated by said acts; and being such holders and owners, the said trustees on the 21st September, 1851, sold and assigned said note to said plaintiffs, for ready money, in pursuance of the provisions of said acts and said trustees' power under them, by means of which plaintiffs became and are the holders and owners of said note; by means of which defendants became liable to pay plaintiffs said money on request," &c.

The writ was returned "not found" as to John B. Savage. The other two defendants demurred to the declaration, but their demurrer was overruled; and they then pleaded, 1st, that the charter of said Bank was not forfeited, and its corporate existence was not dissolved, as alleged in the declaration"; 2d, "that said Stodder and Smith were not, at the time and in the manner set forth in the declaration, trustees of the said Bank"; 3d, "that the said Stodder and Smith were not, on the 21st day of September, 1851, or at any other time, invested with the legal ownership and control of said note, and they did not make a legal transfer and endorsement of the

same to the plaintiffs"; 4th, "that the endorsement of the said trustees is null and void"; 5th, "that the said Bank, at the date of the said note, had no power or authority to make a contract, and that the said note is null and void."

The plaintiffs demurred to the first, third, and fifth pleas, and their demurrer was sustained; and issue was joined on the second and fourth pleas. The jury returned a verdict for the plaintiffs, and judgment was thereon rendered against all the defendants.

On the trial, as appears from the defendants' bill of exceptions, the plaintiffs read in evidence to the jury the note sued on, with the endorsement thereon; "and the defendants objected to this endorsement, because it was not shown that it was made at the time alleged in the declaration, and because no proof was made of the genuineness of the signatures of Smith and Stodder; but the objection was overruled, and the transfer was read in evidence, to which the defendants excepted."

"The plaintiffs then introduced evidence, tending to show that Sidney Smith and David Stodder were legally elected and appointed trustees of said Bank, according to the terms of the act of 1845; that they accepted the trust, gave bond, and were qualified, as the act directed; that the note sued on was sold by said trustees, for cash, to Charles Walshe, on or about the 21st September, 1851, according to the provisions of the act of February 12, 1850; that said Smith and Stodder then executed the transfer endorsed on the back of the note, on the 21st September, 1851, or about that time; that for some time previous to said transfer and sale, at that time, and subsequently, said Smith and Stodder were the acting trustees of said Bank. It was further shown, that a settlement was made with the defendants to this suit on the day the note bears date, and they gave the note on which suit is brought, and, on the same day they gave the note, a credit for $380 was endorsed on the note. The plaintiffs offered no further evidence, and the defendants introduced no evidence whatever.

"The defendants asked the following charges:

"1. That proof must be adduced that the charter of the Bank was declared forfeited by judgment of the Circuit Court of Mobile county, according to the provisions of the act of 1843.

" 2. That the trustees had no power to assign and transfer the note sued on, so as to enable the assignees to sue in their own name.

" 3. That if the note sued on was made payable to the Bank after the forfeiture of its charter, it is void for want of power on the part of the Bank to make a contract, unless the plaintiffs show that the note was made in compounding a bad or doubtful debt.

" 4. That if the note sued on was made payable to the Planters and Merchants' Bank after the forfeiture of its charter, it must be shown by the plaintiffs that the note was given in liquidation or extension of a previous existing debt due the Bank, before they can recover in this suit."

The court refused each one of these charges, and the defendants excepted to each refusal ; and they now assign for error—

" 1. The rendition of judgment against John B. Savage, upon whom process had not been served, and who was not before the court by attorney or otherwise.

" 2. The overruling of the demurrer to the declaration.

" 3. The sustaining of the demurrer to the first, third, and fifth pleas.

" 4. The several rulings of the court set forth in the bill of exceptions."

R. C. TORREY, for the appellants :

I. The process was returned " not found" as to John B. Savage, and no appearance was ever entered against him ; yet the plaintiffs did not discontinue as to him, but declared against him, and entered up judgment against him. This was error. Williams v. Lewis, 2 Stew. 41 ; Gilbert v. Lane, 3 Port. 267; Graham & Christian v. Roberds, 7 Ala. 719.

II. The demurrer to the declaration should have been sustained—

1. Because it did not allege that a judgment of forfeiture had been rendered against the Bank. The acts of 1843 and 1845 are public statutes, and may be considered a part of the declaration. The first act provides for a forfeiture of the Bank's charter, and a renunciation of its banking privileges, *provided,* upon a judicial inquiry, certain alleged facts shall be

found to exist; "and after rendition of judgment by the court upon said information, in favor of the State, all the provisions of this act shall have full force and effect"; but, "if no cause of forfeiture shall be found, this act shall have no force or validity." Now the action of the court upon the information directed by this act to be filed, is a matter of which the courts cannot take judicial notice: and as the act did not go into operation until the issue so directed to be made had been found in favor of the State, it was necessary that the action of the court should be alleged in the declaration.

2. Because it described the Bank's charter as forfeited prior to the execution of the note, and alleged the note to have been made payable and negotiable at the Bank; and from this it may be fairly inferred that it was discounted at the Bank for profit, which would be contrary to the acts cited, and would render the contract void.—Saltmarsh v. Planters and Merchants' Bank, 14 Ala. 668; same case, 17 *ib.* 761.

3. Because it was too uncertain and contradictory to present a fair issue. It alleged that the charter was forfeited and surrendered to the State by the acts of 1843 and 1845, and at the same time that the charter was continued by force of the same acts; thus presenting to the defendants two issues —that the charter was forfeited by those acts, and that it was not forfeited.

4. Because the endorsement gave the plaintiffs no right to sue in their own names as assignees of the trustees. The acts cited declare that the corporate name of the Bank may be continued and used in the collection of its debts. The case of Jemison v. Planters and Merchants' Bank, 17 Ala., clearly shows that, previous to the sale, the suit should be brought in the name of the Bank by its trustees, and that the declaration should show the character in which they sue. The act of 1850, by virtue of which the trustees sold the assets of the Bank, is entirely silent as to the manner in which the purchasers might sue on the notes sold. As the trustees could not sue in their own names, they could not by their endorsement convey to the purchasers a right (which they themselves did not possess) to sue in their own names. If the trustees' endorsement only conveyed the right which they had, it was the right to use the name of the Bank, and the suit should have

Savage & Darrington v. Walshe & Emanuel.

been brought in its name. On this point, see Camack v. Ridgway, 18 Ala. 286, and Crawford v. P. & M. Bank, 6 *ib*. 290.

5. Because it alleges that the trustees sold the note, by virtue of the act of February 12, 1850, on the 21st day of September, 1851 ; while the act referred to declares, that the trustees shall sell " within *thirty days* after the first Monday of September, 1850." The object of the act was, to provide for the speedy settlement of all the outstanding business of the Bank, and to make a final close of the whole concern. If the trustees, in defiance or disregard of the statute, might (as they did in this instance) delay the sale for ten months after the expiration of the limited time, they had an equal right to delay for ten years. What then becomes of the act ? It is of no effect : it is a mere recommendation, which the trustees may regard or not as suits their pleasure. That the act is mandatory in this respect, see Commercial Bank of Natchez v. Chambers, 8 S. & M. 9 ; 2 Sup. U. S. Digest, p. 808, §§ 29 to 31.

III. The first plea was good, and the demurrer to it should have been overruled. It traverses a material allegation of the declaration. The plaintiffs claim through the acts of forfeiture, and may well be held to prove what they have alleged.

IV. The third plea is good. The plaintiffs claim through the endorsement and transfer of Stodder and Smith as trustees. If Stodder and Smith never were such trustees, or never made a valid transfer or endorsement, then plaintiffs' title fails. This allegation, therefore, defendants might properly traverse, and their plea is good.

V. The fifth plea, which alleges that the note is null and void, is good. The defendants had a right to show that the note was purchased or discounted by the Bank in the way of business. and with a view to profit, and was therefore void, as the Bank had no authority to do such acts.—Cases of Saltmarsh and Jemison, *supra*.

VI. The charges asked raise the same questions which are presented by the demurrer to the declaration.

F. S. BLOUNT, *contra:*

1. The judgment rendered affects only the parties who have been served with process. If erroneous, it will be amended

40

in this court at the costs of the appellants.—Clay's Digest, p. 332, § 54; ib. 361, § 62; Graham & Christian v. Roberds, 7 Ala. 719; Del Barco v. Br. Bank at Mobile, 12 ib. 238.

2. The declaration presents a substantial cause of action, and the demurrer thereto was properly overruled.

3. The first, third, and fifth pleas, to which demurrers were sustained, tendered immaterial issues. The plaintiffs were not required to reply to them, as the declaration would have been good, if all the matters questioned by them had been stricken out.

4. The objection to the endorsement, that it was not made at the time alleged in the declaration, is not tenable. It was an unnecessary allegation, and might be treated as surplusage. It was sufficient, if put in issue, to show that the endorsement was made before suit brought. The evidence shows that it was made on or about the 21st September, 1851, the day alleged in the declaration.

5. The genuineness of the endorsement could only be put in issue by the plea of *non est factum*, or other plea setting out the special matter, verified by affidavit; otherwise, it is demurrable.—Cummings v. Mason, 9 Port. 309. The proof set out shows that Stodder and Smith executed the transfer.

6. The charges asked were properly refused. If the Bank surrendered its charter, and went into liquidation, it was sufficient to invest the trustees with the right to assign and transfer the assets. The possession of the note by the trustees was evidence of their acceptance of the trust, and of the surrender of the charter. These charges are based on the idea, that the acts cited declared all contracts made by the Bank after the forfeiture of its charter absolutely void. But this, as appellants concede, was only consequent upon the forfeiture of the charter, and its charter never has been forfeited : the judgment of forfeiture rendered on the 24th February, 1843, by the Circuit Court of Mobile, was reversed by the Supreme Court, at its June term, 1847, and the cause was not remanded.—The State v. P. & M. Bank, 12 Ala. 547. No other proceedings were had under the act of 1843, and no forfeiture of the charter has been judicially declared. By non-user, and the acceptance of the terms of the act for the settlement of its affairs, the surrender of the charter may be

Savage & Darrington v. Walshe & Emanuel.

presumed ; yet the appellants in this suit cannot enforce or take advantage of a cause of forfeiture : the government alone, which created the corporation, can institute such a proceeding, since it may waive a breach of the contract.— Angell & Ames on Corporations, p. 664. The fact is, however, that this note was taken "on a settlement made with the defendants on the day the note bears date, and they gave the note on which suit is brought."

7. The suit is properly brought, and the declaration shows how the title was derived. The act of 1850, in authorizing the trustees to sell the assets of the Bank, invested the purchasers of its negotiable paper with the same title, and legal rights flowing therefrom, that would have attached to the purchase of negotiable paper from any other party ; the power to endorse, transfer, or assign, was a necessary incident to the power to sell. The cases of Saltmarsh and Jemison, (17 Ala. 754, 761,) cited by appellants, were decided before the passage of the act of 1850. The plaintiffs do not sue for the use of the Bank, but in their own right as endorsees for valuable consideration, and it is only necessary for them to show a legal right derived from the Bank. This can only be done through the trustees, acting as such in behalf of the Bank. The endorsement on the note shows the character in which it was done, and is a literal compliance with the eighth section of the act of 1845.

8. The declaration nowhere alleges that the charter was " forfeited:" " surrendered" is the only word used ; and consequently it presents no issue as to the forfeiture of the charter.

GOLDTHWAITE, J.—The first question presented on the record, is, as to the sufficiency of the declaration.— The action is brought by the appellees, as the assignees of Sidney Smith and Daniel Stodder, trustees of the Planters and Merchants' Bank, a late corporation ; and describes the note sued on, as dated in May, 1847, and negotiable and payable at said Bank. It further alleges, that before the execution of the note, the corporation was dissolved, and its charter and franchise of banking surrendered to the State, but by virtue of the provisions of the statute of 1843, and the acts amendatory thereto, the charter was continued, and the trus-

tees named elected and appointed ; and that they, on the 21st
September, 1851, sold and assigned the note to the plaintiffs.

In determining the question on the demurrer, it is necessary
to refer to the various acts which have been passed by the
Legislature bearing upon the points involved, with the view
of ascertaining whether the facts alleged were sufficient to
constitute a legal liability on the part of the defendants. The
act of 13th February, 1843, (Acts 1842-3, p. 70,) provides for
the final settlement of the affairs of the Bank by commission-
ers, and confers upon them the authority to take into possess-
ion the *choses in action* and other property. It provides for
the sale of the real property, and the collection and exten-
sion of the debts, and authorizes the use of the corporate
name of the Bank in the collection of debts, and for the pur-
pose of maintaining suit. It also provides for judicial pro-
ceedings to be instituted against the Bank, with the view to
a forfeiture of its charter, and declares, that upon a rendition
of judgment in favor of the State in such proceeding, the
other provisions of the act are to have full force and effect ;
and it also declares, " that if no cause of forfeiture shall be
found, this act shall have no force or validity." On the 24th
January, 1845, (Acts 1844-5, p. 46,) an amendatory act was
passed, which, amongst other things, provided for the election
of two trustees by the stockholders—made it the duty of the
commissioners to pay over and deliver to them all moneys,
*choses in action*, &c., except the amount necessary to pay the
outstanding claims against the Bank ; and also gives to the
trustees the authority to use the name of the Bank in the col-
lection of its debts, in the same manner as if the charter had
never been forfeited. And finally, on the 12th February,
1850, (Acts 1849-50, p. 125,) another act was passed, which,
by its second section, provides " that within thirty days after
the first Monday in November next, the said trustees shall
sell, for cash, all remaining property, claims, rights and assets
belonging to said bank fund, and realize the same for the pur-
pose of final settlement."

We have given the substance of such portions of the several
acts as have any bearing upon the points involved ; and the
first question, which meets us upon the threshold, and which
has been strongly pressed upon us by the counsel for appel-

lants, is, whether the validity of the several acts to which we have referred is not dependent upon a judgment of forfeiture being first had against the Bank, which (it is evident) was contemplated under the act of 1843, and without which, as the proviso of the first section declares, the act is to be of no validity. If the several acts are nugatory and void without such a judgment, then it is evident that the declaration is defective, for it does not aver the rendition of any judgment of forfeiture, and without an averment to that effect, the courts could not take judicial notice of it, if it existed. It is clear, however, that the only object which the Legislature could have had, in requiring a judicial proceeding to be instituted against the Bank, was to obtain a dissolution of its charter agreeably to law ; and it is equally certain that it was competent for the State, at any time, with the assent of the corporation, to resume its franchises, and provide for the winding up of its affairs. In construing the act of 1843 and the subsequent acts, we must regard them as affecting the corporation alone, and viewed in this light, we are of opinion that the requisition on the State to obtain a judgment of forfeiture might be dispensed with by the Bank ; that the result, which it was the sole object of the Legislature to accomplish by the judgment of forfeiture, could as well be attained by a voluntary surrender by the Bank of its franchise, and that the proviso was not intended to affect the validity of the act if its terms were accepted by the corporation. We concede, that where a statute affects a community, and requires, as a condition to its validity, that something should be done before it goes into operation, in such a case the act has no force or effect, until the thing required to be done is performed. But where the statute affects but one or more designated persons, it matters not whether they are natural or artificial, those interested in the object of the act may always dispense with a preliminary of this character, and claim the benefit of its provisions, without requiring the performance of a condition which can affect themselves alone. A statutory enactment may be waived by the party entitled to the benefit of it (Williams v. Potter, 2 Barb. Sup. Ct. R. 316); and precisely upon the same principle, the Bank could dispense with the judicial proceeding, by a surrender of its charter and as-

senting to the provisions of the act. The declaration, as we have seen, contains an averment that the corporation surrendered its charter to the State, as well as an allegation that the note sued on was transferred by the operation of the act of 1843, and the other acts amendatory thereto, to the trustees elected and appointed under those acts, which is equivalent to an acceptance of their provisions by the corporation, which would, of itself, operate as a surrender of its franchises (Ang. on Cor. 658, and cases there cited) ; and as the Bank had the right to dispense with the judicial procedure required by the act of 1843, by placing itself in the same condition in which a judgment of forfeiture would have placed it, an allegation which shows they did this, and that they assented to the several acts referred to, dispensed with the necessity of any averment that a judgment of forfeiture had been rendered.

It is urged on the part of the appellants, that the averment that the charter was continued by the acts referred to, is repugnant to the previous allegation of the surrender of its franchises by the corporation. But, construed with reference to those acts, we understand it to mean simply, that although the charter was surrendered, the corporation was not, *ipso facto*, dissolved, but its existence was continued by operation of law, for the purpose of settling its affairs according to the provisions of the statutes.

It is also urged, that as the note described in the declaration was made negotiable and payable at the Bank, the legal presumption is, that it was discounted, instead of having been taken in settlement of a debt due, and that neither the Bank, nor its commissioners or trustees, after the surrender of its charter, had the authority to discount paper. This position cannot be sustained. The form in which the note was taken is usual and customary in mercantile transactions, and affords no evidence whatever that it was not taken under the power conferred by law upon the trustees.

Another ground of demurrer, strongly pressed, is, that the trustees had no power to invest the purchaser, by their assignment, with the right to sue upon the note in his own name. We deem it unnecessary to inquire whether the legal title to the choses in action of the Bank was vested in the

commissioners or trustees by the acts of 1843 and 1845, giving them the authority to use the name of the corporation in suits if they thought proper ; or whether it remained in the Bank, which was by the operation of these acts kept alive for that purpose. By the act of 1850, the trustees are authorized to sell all the claims of the Bank—a power which was not conferred upon them under any of the previous acts ; and this power, we think, by necessary implication, conferred upon them the authority to transfer negotiable securities so as to pass the legal title to the purchaser by their assignment. If they were invested with the legal title under former acts, the proposition is too plain for argument, while, if the existence of the Bank was prolonged for the purpose of preserving the title in it, acting for it *pro hac vice*, and for the parties in interest, we must regard them, under the last act, as having the authority to transfer by their assignment to the purchaser the legal title.

The only remaining question, upon this branch of the case, is, as to the power of the trustees to sell at the time specified in the declaration, which is September, 1851 ; and this depends upon the construction to be given to the clause of the second section of the act of 1850, which requires the trustees to sell " within thirty days after the first Monday in November" of that year. If it is mandatory, the sale made at a period beyond the time specified in the statute is void, and the purchaser acquires no title ; while on the contrary, if the clause referred to is directory merely, the objection cannot prevail. It is to be observed that the statute does not say that the sale is nugatory for the failure to observe the requisition in regard to time, and this alone is regarded by the courts as a strong ground for construing the words as directory rather than imperative.—Pond v. Negus, 2 Mass. 230 ; The King v. The Inhabitants of St. Gregory, 2 Ad. & El. 99; Cole v. Green, 6 Man. & Gran. 872. Here there are no words of prohibition to the exercise of the power after the time specified in the statute, but the power itself is of a nature which would not justify the inference that it was intended by the Legislature to operate as a limitation on the authority of the trustees. We all agree that the clause referred to was directory merely.

In the action of the court in sustaining the demurrer to the first, second and fifth pleas, there was no error. The first plea was defective, for the reason, that the averment that the charter of the Bank was not forfeited, is no answer to the declaration which contains no such averment. It is true, that if the plea contained other matter, properly pleaded, sufficient to bar the action, the averment we have noticed might be rejected as mere surplusage; but the objection to the other allegation is, that it is matter of law, rather than of fact.—Gould's Pl., ch. 3, § 12. It is, that the corporation was not dissolved. It does not deny that the charter was surrendered to the State, as is averred in the declaration, but answers the immaterial averment as to the effect of the surrender, which is mere surplusage and matter of law. The same objection applies to the second and fifth pleas, both of which assert legal conclusions instead of facts. Whether a transfer by endorsement, made by the trustees to the plaintiffs below, is legal, or whether the Bank had authority to make a contract at the date of the note, are pure questions of law. Neither was there any error, of which the appellants can claim advantage, in admitting the endorsement of the note in evidence. Its genuineness could, under our decisions, only be impeached by a sworn plea (Bragg v. Nall, 14 Ala. R. 619 ; Tarver v. Nance, 5 *ib.* 712 ; Dew v. Garner, 7 Port. 503); and if it were necessary to prove that it was made at the time alleged in the declaration, the bill of exceptions shows that this proof was afterwards made, which, under our decisions, was sufficient.—Lawson v. The State, 20 Ala. 65.

Neither was there any error in the refusal of the court to give the several charges requested by the appellants. The first two simply assert the propositions, that a judgment of forfeiture was necessary to enable the plaintiffs to recover, and that the trustees could not, by their endorsement made upon the sale to the purchasers, confer upon them the right to sue in their own name, each of which we have already considered.

The third and fourth charges were, as we understand them, to the effect, that to enable the plaintiffs to recover, proof must be made, independent of the note, that it was given for a bad or doubtful debt, or in liquidation of a previously existing

debt due to the Bank before its charter was dissolved.   Our opinion is, that the note itself is evidence, *prima facie*, that it was lawfully given under the acts of 1843 and 1845 ; but under the issue presented by the pleadings, the only question of fact for the jury to determine, was, whether the persons named as such in the declaration were the trustees of the Bank.   We say this, because the fourth plea presents purely an issue of law arising upon the fact put in issue by the second plea ; and it is a well settled rule in pleading, that where a party puts himself on one issue, he admits all the rest.—Cow. & Hill's Notes to Phil. Ev., vol. 3, p. 608, 3 ed. Under the influence of this rule, no other evidence was necessary than that which established the fact that the persons named in the declaration were the trustees under the law.

The only remaining assignment of error is, that the judgment below was rendered against John B. Savage, who, as the record shows, was not served with the process, and who did not appear.   The cases of Grayham & Christian v. Roberds, 7 Ala. 719, and Del Barco v. The Br. Bank at Mobile, 12 *ib.* 238, show that upon thse facts the judgment must be regarded as not affecting any other persons than those who were before the court, and that the judgment entry as against Jno. B. Savage may properly be regarded as a mere clerical mistake, and that it might have been rectified in the court below under the statute (Clay's Dig. 322, § 55; Code, § 2401); and under the same statutes, as no such motion was made and refused, the cause cannot be reversed on that ground.

Judgment affirmed.