Commissioners Court of Limestone County v. John D. Rather et al.

reversed, and the cause is remanded for a new trial. The appellee will pay the costs.

## COMMISSIONERS COURT OF LIMESTONE COUNTY *vs.* JOHN D. RATHER ET AL.

[APPEAL FROM ORDER GRANTING MANDAMUS.]

1. *Time when act is to be performed; when directory merely.*—A statute prescribing a period of time within which public officers are to perform official acts regarding the rights of others, will, as to third persons, be held to be *directory* merely, and not to invalidate or prevent official acts after the expiration of the specified time, unless the nature of the act to be performed, or the spirit of the statute, force a contrary conclusion.

2. *Same.*—Where a statute (under which a county issued bonds, a series of which fell due annually for a period of ten years,) provided that "as soon as" certain prescribed conditions were complied with, "*and annually thereafter, for a period of ten years*," the court of county commissioners should levy and assess a tax sufficient to pay the series falling due each year, it was held, that the failure to assess and collect the tax within the time prescribed, did not thereafter limit or destroy the power to levy and collect the tax, but that the power existed as long as the legal obligation to pay the debt subsisted.

Commissioners Court of Limestone County v. John D. Rather et al.

3. *Contracts; law as to enforcement of remedy, how can not be changed.*—The law in force at the time and place of making a contract, and when it is to be performed, becomes part of the contract both as to its stipulations and the remedy provided for their enforcement. After the contract is thus entered into, subsequent legislation can not change the remedy so as to impair the obligation of the contract as it stood at the time it was entered into.

4. *Bonds issued by county of Limestone under act of December 14, 1855; create valid obligations against the county, the payment of which will be enforced by mandamus.*—The bonds issued by the court of county commissioners of Limestone county, under the act entitled "An act to authorize the commissioners court of Limestone county, State of Alabama, to subscribe to the capital stock of the Tennessee and Alabama Central Railroad Company," passed over the veto of the governor on the 14th December, 1855, create a valid debt against the county, which are not required to be presented for allowance to the commissioners court; and the commissioners court, refusing to levy and assess a tax, as authorized by law, to pay the bonds, were compelled to do so by *mandamus*, which was held to be the appropriate remedy to enforce the payment of the bonds.

APPEAL from the Circuit Court of Limestone.
Trid before Hon. W. B. WOOD.

This was an appeal by McClellan, judge of probate, and Kimball, Hine and Bullington, commissioners, &c., composing the court of county commissioners of Limestone, from an order awarding, on a petition filed April 21st, 1866, by John D. Rather and other bondholders, a peremptory *mandamus* compelling the individuals composing the court of county commissioners of Limestone to assess and levy a sufficient tax to pay certain bonds mentioned in the petition, and interest thereon, issued by Limestone county in payment of a subscription of stock of the Tennessee and Alabama Central Railroad Company.

The bonds in question were issued under authority of an act of the general assembly, passed by the constitutional majority over the veto of Gov. Winston, on the 14th of December, 1855, and so much of which as is necessary to a proper understanding of the case is set forth in full. These portions of the act are as follows:

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly concened,* That in pursuance of the wishes of the people of

Limestone county, as expressed at an election held for that purpose, on the first Monday in May, 1854, and also reaffirmed at the recent election for representatives in the general assembly, held on the first Monday in August, 1855, that the court of county commissioners for said county of Limestone, be, and they are hereby authorized, empowered and required, for and in behalf of said county, to subscribe for stock in the Tennessee and Alabama Central Railroad Company, to the amount of two hundred thousand dollars, to be raised in the manner, and upon the condition hereinafter mentioned.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

SEC. 3. *Be it further enacted,* That as soon as the conditions set forth in the succeeding sections of this act are fully complied with, it shall be the duty of the court of county commissioners of Limestone county to take the steps hereinafter prescribed, and all the necessary and proper steps for the purpose of raising annually the sum of twenty thousand dollars, until the sum of two hundred thousand dollars shall be raised, to be applied to the construction of that portion of the Tennessee and Alabama Central Railroad which shall be in Limestone county, to-wit: From some point at or near Decatur to the northern line of said county, where it shall be intersected by a railroad to be constructed thence in the direction of Pulaski and Columbia, Tennessee, styled the Central Southern Railroad, and on no account shall the funds raised by virtue of this act, or any part of them, be otherwise appropriated.

SEC. 4. *Be it further enacted,* That no assessment or levy of taxes shall be made by virtue of this act, until (I) an amount of good and solvent subscriptions shall be made to the capital stock of said company, which, including the two hundred thousand dollars raised by virtue of this act, shall be sufficient, according to the estimate of a competent engineer, based upon an accurate and thorough survey of said route, to construct a railroad track across the county of Limestone as hereinbefore specified, nor until (II) the grading of the Central Southern Railroad of the State of

Tennessee is let to contract, or the court of county commissioners of Limestone county are satisfied from other reasons that the said Central Southern Railroad will be constructed, nor until (III) the president of said Tenessee and Alabama Central Railroad Company shall have made affidavit before the probate judge of Limestone county, that the bonds or money to be received by him under the provisions of this act, shall be solely and faithfully applied to the construction of said road within the limits of Limestone county, and the private property of the president, who first makes the affidavit, shall be liable to the county of Limestone for the misapplication of said bonds or money, made during his term of office, and his successors in office shall each, for his own misapplication, be similarly liable.

SEC. 5. *Be it further enacted,* That as soon as the three preceding conditions are complied with, and annually thereafter for a period of ten years, it shall be the duty of said court of county commissioners to assess such a per centum tax on the State tax of that year, and each succeeding year for the period above mentioned, as shall raise the sum of twenty thousand dollars annually, and the same shall be collected in the same manner as the State and county taxes are collected.

&ast;　　&ast;　　&ast;　　&ast;　　&ast;　　&ast;　　&ast;

SEC. 8. *Be it further enacted,* That as soon as the conditions set forth in section 4 of this act are complied with, it shall be the duty of the court of county commissioners of said county to issue and deliver to the president and directors of the Tennessee and Alabama Central Railroad Company, county bonds for the sum of two hundred thousand dollars, payable in ten equal annual installments, on the first day of March of each year thereafter, at the office of the probate judge of said county, or elsewhere, as the said court may deem best; and the said court shall have authority to make said bonds for any amount they may think proper, not exceeding one thousand dollars, nor less than five hundred dollars; *Provided,* however, that the aggregate amount of bonds payable in any year, shall not, except on the contingency mentioned in the succeeding

Commissioners Court of Limestone County v. John D. Rather et al.

section of this act, exceed nor fall under the sum of twenty thousand dollars; the said bonds shall be signed by at least a majority of the court of county commissioners, and in the presence of the probate judge, who shall certify that fact under his seal of office upon the bond; and the said bonds shall bear no interest, unless by default of the county they shall not be paid when presented at maturity.

SEC. 9. *Be it further enacted*, That the court of county commissioners aforesaid, shall endeavor to make such assessment each year as shall raise the exact sum of twenty thousand dollars; but in case the amount assessed and collected shall be either more or less than that sum, the amount to be assessed the next year shall be increased or diminished by the excess or deficit of the preceding year.

*    *    *    *    *    *    *

SEC. 19. *Be it further enacted*, That any member of said court of county commissioners refusing to carry out the provisions of this act, or failing to attend the meetings of said court purposely to defeat the execution of this act, shall be subject to all the penalties, fines and forfeitures now in force for failure to perform his duties as a member of said court, and in addition thereto, he shall be liable to pay said company all such damages as it may have sustained on account of such wrongful refusal or absence.

SEC. 20. *Be it further enacted*, That the court of county commissioners aforesaid shall have power and authority to do all and other acts and things, not inconsistent with the provisions of this act, which may be necessary and proper to give full effect to the objects and provisions of this act.

On the 8th of February, 1858, the general assembly passed an act "to authorize the sale of the bonds of the county of Limestone," the first section of which, omitting the enacting clause, was as follows:

"That the bonds of the county of Limestone, issued by the court of county commissioners of said county, in aid of the Tennessee and Alabama Railroad Company, under an act of the legislature of the State of Alabama, passed December 14, 1855, entitled an act to authorize the court of county commissioners of Limestone county, State of

Alabama, to subscribe to the capital stock of the Tennessee and Alabama Central Railroad Company, be and the same are hereby made transferable either by endorsement or delivery."

The petition for *mandamus* shows the organization and existence of the Tennessee and Alabama Central Railroad Company, a full performance, in accordance with the provisions of the act of December 14th, 1855, of all the conditions precedent to the issuance of the bonds; their execution and delivery to the Tennessee and Alabama Central Railroad Company, and a sale of the bonds to the petitioners for a valuable consideration in the year 1858. It was also shown that the petitioners had duly presented their bonds to the commissioners court and demanded payment thereof, and also that a sufficient tax be levied and assessed to pay the same and interest thereon, in accordance with the act of December 14th, 1855; and that the commissioners court refused to levy and assess any tax on the ground that, under the act under which the bonds were issued, the time in which the commissioners court was authorized to levy and assess said tax had expired. A demand was also made upon the tax collector for payment of the bonds, &c., and he likewise refused. The time when these demands were made is not stated in the petition. It is also alleged that the *mandamus* prayed for was the only adequate remedy whereby petitioners could enforce their rights, &c., in the premises.

The cause was tried in the court below on an agreed state of facts, in which it was admitted—1st. That the act of 14th December, 1855, is the law under which the bonds now in controversy were issued, and also the law by and under which said bonds are to be paid off and discharged. 2d. That all of the terms, conditions, stipulations and requirements of said law, except as hereinafter stated, were duly and properly done, discharged and performed by those whose duty it was to discharge and perform them. 3d. That said bonds, to the amount of two hundred thousand dollars, were issued by said court of county commissioners, under and by virtue and in strict compliance with and con-

formity to the provisions of said law, and said bonds were, by said court, as by said law required, delivered to the president and directors of the Tennessee and Alabama Central Railroad Company.   4th. That the said Tennessee and Alabama Central Railroad Company, under and by virtue of an act of the general assembly of Alabama, approved February 8th, 1858, sold, negotiated, transferred and delivered, for a valuable consideration, said bonds to various persons.   5th. That the bonds mentioned in the petition as having been sold to Rather and others, have been sold and transferred to the said John D. Rather, and other persons named, and the same are justly due and unpaid.   6th. That the said bonds of the said John D. Rather and others who are interested with him in this proceeding, have been duly presented to said court of county commissioners, and also to the tax collector of said county for payment, and by both payment was refused.   Said bonds were also presented to said court, and said court applied to and asked to assess and levy the tax provided for by said law for the payment of said bonds, which application the said court refused to grant, &c., for the reason that section 5 of the act of 1854 provided for the assessment of said tax annually for ten years, and as the ten years have elapsed and some of the bonds are yet unpaid and outstanding, as aforesaid, the court feels that its authority to assess said tax ceased with the expiration of the ten years, and that said court now has no authority to make said assessment. 7th. That the first assessment under said law was for bonds falling due 1st March, 1858; assessment was made in 1857. 8th. That for and during some of the years of the late war between the northern and southern States, to-wit, the years 1864 and 1865, no assessment of said annual tax was made by said court, upon the alleged ground and for the reason that the county of Limestone aforesaid was within the Federal military lines and under the Federal military rule, and during those years said court could not, and did not, make said required assessment.   In some of those years above named there was no probate judge for the county of Limestone, and in some there was no court of county commis-

sioners for said county, and in some of said years both the probate judge and the court of county commissioners were prevented from discharging their respective functions, including the assessments aforesaid, because of the condition of the country, growing out of the Federal military rule aforesaid, so that said assessments were not made for said years because of a public war, and also for the other reasons above given. 9th. That all of said bonds were issued on and dated 14th February, 1857; twenty thousand dollars of them made payable on the 1st March, 1858, and the same amount payable 1st of March of each year thereafter, up to and including the year 1867.

The court awarded a *mandamus* as prayed for, and hence this appeal.

WATTS & TROY, WOODS & CHILTON, WALKER & BRICKELL, and B. A. McCLELLAN, for appellants.

[Appellants' brief did not reach the Reporter.]

W. H. WALKER, HOUSTON & PRYOR, and R. W. WALKER, *contra.*

R. W. WALKER, for appellees, made the following points: 1. A statute specifying a time within which a public officer is to perform an official act affecting the rights of others, is directory merely, as to the time within which the act is to be done, unless from the nature of the act or the phraseology of the statute, the designation of the time must be considered a limitation on the power of the officer.—22 Ala. R. 126; 6 Wend. 486-7-8; 3 Mass. 230-2; 5 Cowan, 269; 10 Ala. 107-8; 26 Ala. 619; Dwarris, 222-3; 18 N. Y. 200.

2. By this it is not meant that a duty does not rest upon the officer to act within the time, a duty which he may be compelled to perform, but simply that his power to act does not expire with the time.—*Stickney v. Huggins*, 10 Ala. 106, 108; *Webster v. French*, 12 Ill. 302.

3. When a statute directs an officer to do a thing in a

certain time, without any negative words restraining him from doing it afterwards, the naming of the time will not be construed as a limitation of his authority.—Dwarris, p. 223; *Ex parte Heath*, 3 Hill, 42; *People v. Holley*, 12 Wend. 486; *Gale v. Mead*, 2 Den. 232; *Barnes v. Badger*, 41 Barb. 98–9; *People v. Cook*, 14 Barb. 290; *S. C.*, 8 N. Y. 67; *Miller v. Finkle*, 1 Parker's Cr. R. 374; 29 Md. R. 516.

4. This act does not contain negative words prohibiting a tax after ten years, and therefore is not a limitation of power.—Authorities, *supra*.

Where there is no substantial reason why the thing to be done might not as well be done after the time prescribed as before, no presumption that allowing it to be so done may work an injury or wrong, nothing in the act itself or other acts relating to the subject, indicating that the legislature did not intend that it should rather be done *after* the time prescribed than not to be done at all,—there the courts assume that the intent was, that if not done within the time prescribed, it might be done afterwards.—*State v. McLean*, 9 Wis. 292; Dwar. 225.

5. The argument that the fifth section of the act is a limitation of the power of the commissioners court to levy a tax, proceeds upon an erroneous view of the purpose of that section. The imposition upon the court of *the duty* to levy a tax of $20,000 annually for ten years, was intended for the benefit of the bondholders, not of the county. The county could not be called on to pay the bonds until they fell due. The period of their maturity was stipulated on their face. This was all the protection the county needed. The imposition of the duty to levy annually a tax sufficient to meet and pay off the bonds as they matured, was intended to give a marketable value to the bonds, and so facilitate their negotiation.—See *Stickney v. Huggins*, 10 Ala. 108.

6. If the provision referred to was designed as a limitation of the authority of the court to provide the means of paying off the bonds, so that the authority so to provide should terminate unless exercised strictly within the peri-

ods designated, the very feature of the law which was intended to give currency to the bonds, would have effectually destoyed their value in the market. These bonds were negotiable securities in the highest sense.—*Mercer County v. Hacket,* 1 Wallace, 83, 95; *Woods v. Lawrence County,* 1 Black. 386; *White v. Vermont County,* 21 How. 545.

7. If the 5th section is a limitation of the power to tax, the failure of the county to perform the prescribed duty operates virtually an extinguishment of the debt. If the county has no power to levy taxes to pay off the bonds, it is, and will always remain, without the means to discharge them. The creditor has no remedy to coerce the payment. It is idle to say that the obligation of the county is not impaired by a denial of its right to raise by taxation the funds necessary to discharge it. There can be no debt without a right to enforce payment.

8. By the 8th section the court of county commissioners was directed to issue and deliver the county bonds for $200,000, payable as therein directed. When issued, these bonds became valid obligations of the county, which can only be discharged or extinguished by payment.

The authority given by the 8th section to issue these bonds carried with it the power to levy the taxes necessary for their redemption.—*Gibbons v. Mobile Co.,* 36 Ala. 440; *People v. Brennan,* 39 Barb. 522; 1 Wall. 272; *Ex parte Selma & Gulf R. R. Co.,* 45 Ala. 730.

What is implied in a statute, is as much a part of it as what is expressed.—*United States v. Babbitt,* 1 Black. 61; *Gelpcke v. Dubuque,* 1 Wall. 221; see, also, section 20 of the act.

9. The general power to levy all taxes which should become necessary to redeem the bonds, necessarily implied by the grant of the authority to issue the bonds, is not limited or restricted by the other provisions of the act making it the duty of the court to levy certain taxes within named periods.—See, particularly, *Lucas v. Pitney,* 3 Dutch. 221; *Mobile & C. P. R. R. Co. v. Talman,* 15 Ala. 472; *Allen v. Montgomery R. R. Co.,* 11 Ala. 437.

10. On the failure of the court to perform the duty pre-

scribed within the limited time, the general power to provide by taxation the means required to redeem the bonds, necessarily involved in the authority to issue the bonds, may be invoked. On the demand of the bondholder, it is the duty of the court to exercise it. It is no answer to this demand, to say that the power of the court to provide the means for paying the bonds has been destroyed by the failure of the court to perform the special duty imposed upon it by the statute within the exact period prescribed by the statute. Such a proposition is inconsistent with reason and justice. It is allowing a party to take advantage of his own wrong.

11. In 1863–4–5, there was in the county no authority legally competent to perform the duty imposed by the act. Is it possible that in consequence of this the debt has been virtually discharged, by the termination of the authority of the county to provide the means of paying it?

12. The general power of taxation for the purpose of paying the bonds, necessarily implied by the 8th section, is as much a part of the act as the special duty imposed on the court by the 5th section, (authorities, *supra*,) and that general power, and the duty arising out of it, survive the failure of the court to perform the special duty enjoined by the 5th section.

13. If it is said that the power of the court to tax is limited to $20,000 in any year, (under the 5th and 9th sections,) it may be answered, that this limitation is confined to levies made within the ten years, in exact performance of the special duty enjoined by the act. Moreover, under section 9, any deficit in one year is to be made up in the collection of the succeeding year. Now, if no part of the $20,000 was collected in 1859, the court would have had to collect $40,000 in 1860; and if nothing was collected in 1860, the whole deficit would have to be made up in 1861; and so, the levy in that year must have been for $60,000 and over.

14. If this is not so, then the requirement that the court shall levy $20,000 each year, is a limitation of the authority to that year, and if the year expires without a performance of that duty by the court, the power to levy the tax for the

payment of the bonds falling due that year is gone. Indeed, if it be true that the whole authority to tax is lost by the expiration of the period of ten years, it must follow that the authority to make the annual levy is lost, unless exercised within the year prescribed.

This is not the law. Where a county is authorized to levy a sufficient tax *annually* to pay *coupons* as they fall due, the failure to levy the tax within the year does not terminate the power, and the county will be compelled by *mandamus* to levy afterwards a sufficient amount to pay all the *coupons* in arrears, though the amount necessary for that purpose may greatly exceed the amount required to pay the coupons falling due in any one year.— *Von Hoffman v. Quincy*, 4 Wall. 535–6; 6 Ohio St. R. 280–4; 21 How. 303; 2 Metc. (Ky.) 56, 81; 6 Wall. 193.

15. In the cases cited by appellants' counsel from 20 Md. 449, 14 Ind. 306, 7 Conn. 550, 1 H. & J. 359, 14 Ill. 223, the tax authorized was simply for local, public purposes; *i. e.*, for the uses of the corporation. Here the element of making provision to pay a debt to third persons is superadded. In the one case, there is no power except what is expressly conferred, and that is limited in time, the use passing with the time. In the other, the special duty imposed is not the sole power granted, and is intended merely as an additional security to the creditor. The failure to perform this special duty does not extinguish the debt, or affect the duty, or destroy the power of the debtor, to provide the necessary means for its payment.

The *mandamus* prayed for was for a levy sufficient to pay the bonds and interest remaining unpaid; and such, in substance, was the *mandamus* ordered.

PETERS, J.—No question was made on the argument at the bar as to the legality of the bonds in controversy in this suit. It is understood that this was admitted, and that they created a legal debt against the county of Limestone, *which ought to be paid*. But it was insisted by appellants that *mandamus* was not a proper remedy to enforce their collection, and that the court of county commission-

ers of Limestone county had no authority to levy a special tax for their payment; that the power given by the act of the legislature to issue the bonds and to levy a tax for their payment was a special authority, which was limited both in the manner and the time of its execution; that such limitations were peremptory, and not merely directory; and they can not be disregarded in the exercise of the authority conferred. This raises the sole question in the case. But before I proceed to discuss it, it may be proper to remark that it is the opinion of the court, that the bonds in controversy in this case, which were issued by the court of county commissioners of Limestone county, under the act of the general assembly of this State, entitled "An act to authorize the court of county commissioners of Limestone county, State of Alabama, to subscribe to the capital stock of the Tennessee and Alabama Central Railroad Company," passed over the veto of the governor, on the 14th day of December, 1855, *create a valid debt against said county, so far as the same remain unpaid.* When bonds are so issued by the county under authority of law, and in conformity with law, the rule of judicial decision is abundant and emphatic, that *debts so created can not be repudiated.*— *County Commissioners of Knox County, Indiana, v. Aspenwall et al.*, 21 How. 539; *Woods v. Lawrence County, Pennsylvania*, 1 Black, 386; *Thompson v. Lee County, Iowa*, 3 Wall. 327; *Gelpcke v. City of Dubuque*, 1 Wall. 175; *Mitchell v. Burlington*, 4 Wall. 270, 274; *Campbell v. City of Kenosha*, 5 Wall. 194; *The City v. Lamson*, 9 Wall. 477; *Gibbons v. Mobile & Great Northern Railroad Co.*, 36 Ala. 410; *Stein v. Mayor and Aldermen of Mobile*, 24 Ala. 591, and cases cited in appellant's brief; also, *Ex parte Selma & Gulf R. R. Co.*, 45 Ala. 696.

And these bonds, thus issued under said act, are not such claims against the county of Limestone as are required to be presented for allowance, as prescribed by the Revised Code, within twelve months after the time they accrue or become payable, else they become barred.—Revised Code, §§ 907, 909. These bonds are not such claims as those referred to in the sections of the Revised Code above cited.

The act authorizing their issuance renders it wholly unnecessary that they should be audited and allowed by the court of county commissioners, and they are not required to be registered as claims of a different character, nor are they to be paid by warrants on the county treasury, drawn by the judge of probate, but altogether in a different way.— Pamph. Acts 1855–56, p. 281, No. 299, § 8; Pamph. Acts 1857–58, p. 331, No. 329, §§ 1, 2, 3, 4; *Dale County v. Gunter*, 46 Ala. 118.

I will now proceed to discuss the question of the remedy which has been pursued in this case, and in this connection it will be necessary to notice so much of the statute authorizing the issue of the bonds as shows the duty devolved on the court of county commissioners by that act. These duties are imposed by sections 1, 3, 4, 5, 8, 19 and 20 of the act of December 14, 1855.

Under the provisions of this act the county of Limestone subscribed for stock in the said Tennessee and Alabama Central Railroad Company, and issued its bonds to pay for the same, to the amount of two hundred thousand dollars. This appears to have been done before the 8th day of February, 1858, because on that day an act of the general assembly of this State, entitled "An act to authorize the sale of the bonds of the county of Limestone," was approved, and became a law. These bonds are referred to in said last named act as having been already "issued by the court of county commissioners of said county in *aid* of the Tennessee and Alabama Central Railroad Company," under the act first above quoted.—Pamphlet Acts 1857–58, page 331, No. 329.

It is now the fixed and well settled law of this country, that the law in force at the time a contract is entered into, becomes a part of it, both as to its stipulations and also as to the remedy, which may be resorted to to carry the stipulations into effect. And neither the law governing the stipulations nor the remedy can be so altered after the execution of the contract as to impair any rights, whether of remedy or otherwise, which grew out of the contract on the day it was made. The obligation of a contract extends

not only to the stipulations, which the parties have agreed upon, but to the rights belonging to the remedy on the day the contract bears date. The mode of enforcement, *the practice*, may be altered, but not so as to impair the rights of the parties under the contract, as they existed at the date of its execution.—*White v. Hart*, 13 Wall. 646; *Van Hoffman v. City of Quincy*, 4 Wall. 535, 550; *Green v. Riddle*, 8 Wheat. 92; *Ogden v. Saunders*, 12 Wheat. 231; *Mason v. Haile*, 12 Wheat. 373; *Fletcher v. Peck*, 6 Cranch, 87; *New Jersey v. Wilson*, 7 Cranch, 164; *Terrell v. Taylor*, 9 Cranch, 43; *Sturges v. Crowningshield*, 4 Wheat. 122; *Beers v. Haughton*, 9 Peters, 359; *Brown v. Kenzie*, 1 How. 319; *McCracken v. Haywood*, 2 How. 612; *Planters Bank v. Sharp*, 6 How. 327; also, *Gelpcke v. City of Dubuque*. Then, there is no such thing as a lapse of the remedy which entered into the contract for its enforcement at its execution. This lives as long as the contract itself, save in such case, as the law declares, that unless it is resorted to within a certain period, it shall not be available at all. In jurisprudence, it is mere sophistry to speak of an obligation without a remedy. *The power to enforce the obligation is its legal virtue.* When this is gone, there is nothing left upon which courts can act. New remedies may be added, and the former remedies may be left unimpaired, but where the right depends upon contract, the former remedies can not be taken away, so as to effect injuriously the contract in its stipulations or in the duration or benefits of its remedies. *White v. Hart*, 13 Wall. 646, and cases *supra.* It is certainly clear, that the object of the act of December 14th, 1855, above quoted, was three-fold: 1. To authorize the county of Limestone to subscribe for two hundred thousand dollars worth of the stock of the Tennessee and Alabama Central Railroad Company, to *aid* in the building of their road.—Sections 1, 2, 3, 4, and title of the Act, Pamph. Acts 1855–56, pp. 291–2. 2. To authorize the issuance of county bonds for the payment of the stock thus subscribed. Section 8, Acts, *supra;* also, Pamph. Acts 1857–58, p. 331. 3. To provide a speedy and certain means to raise the funds for the payment of said bonds as they fell due.—Sec-

tions 10, 11, Act of 1855–56. The mode to provide for the payment of the bonds is a part of the remedy. This provision for the payment of the bonds required the court of county commissioners of Limestone county to levy a tax for this purpose, and it made it the duty of the tax collector to collect the tax thus levied, and pay it in redemption of the bonds.—Sections 5, 6, 10, Act *supra*. For the convenience of the county, the payment of the bonds was extended over the period of ten years, at a stipulated amount for each one of these years. It is no where intimated in the act, that if the bonds were not paid in the time specified, then there should be no tax levied and collected for their payment. The bonds, taken in connection with the act under which they were issued, were a charge upon the county, to be paid by a levy and collection of taxes for that purpose. This is the undertaking and promise stipulated in the act; and the court of county commissioners is the agency through which this undertaking and promise is to be performed and carried into full effect. It is true, that the court could not levy the proposed tax within less time than ten years; because a shorter time is negatived by the language and purpose of the act; and in this way it was forbidden. But it seems equally certain that they are not forbidden to do this after ten years had expired, in the event that the bonds, or any of them, remained unpaid after that time. The object of the tax was to pay the bonds, and the court was authorized and required to see that this was done. In such case, the limitation of the time, without negative words, is not essential. It is merely directory, and it may be disregarded.—2 Coke Inst. 43; Smith's Com. on Stat., p. 782, *et seq.*, § 670, *et seq.*; *Walker v. Chapman*, 22 Ala. 116; *Savage & Darrington v. Walche & Emanuel*, 26 Ala. 619; *French v. Edwards*, 13 Ala. 506; and numerous cases cited in appellant's brief. The legislative purpose that the bonds should be paid is just as evident as the purpose that they might be issued, and the authority to accomplish the latter purpose survives until its functions are fulfilled. The extension of ten years was in favor of the county, for the convenience of its people, and

## JUNE TERM, 1872.      449

Commissioners Court of Limeston County v. John D. Rather et al.

not a limit on the authority of the court. The intention of the legislative body is to govern in the construction of its statutes.—*Blakeney v. Blakeney*, 6 Por. 109; *Thompson v. The State*, 20 Ala. 54; Smith's Com. on Stat. page 789, § 676; also, p. 611, § 451. Here, it seems altogether reasonable to confine the limitation of the time, not to a limitation of authority of the court of county commissioners to provide the means to pay the bonds, but to a limitation in favor of the county, that the indulgence for this purpose should extend over the period of ten years at least. If we do this, and this was evidently one of the objects of the act, then, the power to provide the means to pay did not expire until its purpose was completed; that is, until the bonds were paid or otherwise discharged. It has been held that where there is not in the law an express limitation of the power given to do a certain thing, an inference will not be made which will defeat one of the objects of the law.— *Cook v. Hamilton Co.*, 6 McL. 112; see, also, numerous cases collected in appellees' brief. But besides this, the 20th section of the act above quoted empowers the court of county commissioners to "do *all* and *other* acts and things, not inconsistent with the provisions of this act, which may be *necessary* and *proper* to give *full* effect to the *objects* and provisions of this act."—Pamph. Acts 1855–56, p. 297, § 20. It has already been shown that the objects of the act were to subscribe for the stock, issue bonds to pay for it, and to provide for the payment of the bonds. The *doing* of these *things* gives full effect to the law. And until *all* these things are done, the objects of the act are not carried into *full effect.* But all have been done, save one; that is, the payment of a certain number of the bonds which are long since due and remain unsatisfied. The power to pay the debt thus created goes along with the power to contract it, and the limitation of this power is not to be implied from the limitation that it should be paid by installments. This limitation is only a limitation in favor of the debtor, but not a limitation against the creditor. The county has had the benefit of this limitation, and ought not now to complain if it is compelled to pay the debt,

Commissioners Court of Limestone County v. John D. Rather et al.

which it is admitted it justly owes. That it is a hard debt to pay, may not be denied. This is not now a matter that can be of any weight in this tribunal. It might have been wise to have considered this before the debt was contracted. After that, it is too late to urge it as a plea of any force in a judicial tribunal.

This, it seems to me, is a sufficient answer to the objection that the tax in this case is a special tax, and that the power to levy and collect such a tax is a special authority; and if this authority is limited in the manner and time of its execution, such limitation is peremptory, and not merely directory. The *objects* of the act show that this is not its true construction. The *objects* of the act the court of county commissioners was authorized and empowered *fully to effect;* that is, to contract the debt and to pay it.

It was, then, the legal duty of the court of county commissioners to have continued to levy the tax until the bonds were paid. And when they refuse to perform such duty, *mandamus* is a proper remedy to enforce it.—*Tarver v. Commissioners Court*, 17 Ala. 527, and cases there cited; 3 Black. Com. 110; Tapping on Mandamus, p. 9, *et seq.; Ex parte Selma & Gulf Railroad*, 45 Ala. 696; see, also, *Ex parte Selma & Gulf Railroad Co.*, 46 Ala. 220; *Walkley v. City of Muscatine*, 6 Wall. 481; also, cases cited in appellees' brief.

Before closing this opinion, it is due to the able counsel on both sides of this important cause to acknowledge, that the court has been greatly aided by the candid argument at the bar, and the extended and well prepared briefs, in which the authorities are dilgently and learnedly collated and discussed.

The judgment of the court below is affirmed, with costs.