# State Auditor *v.* Jackson County.

*Mandamus to State Auditor, in matter of Taxes Assessed against Railroad Company.*

1.   *Assessment and levy of taxes ; when statutory provisions are directory, and when mandatory.*—As a general rule, statutory provisions, regulating the assessment and levy of taxes, are mandatory, when their object is the protection of the tax-payer against spoliation, or excessive taxation ; but regulations designed for the information of the assessor, or other officer, and intended to promote dispatch, method, system and uniformity, in modes of proceeding, will be held merely directory, when the assessment is so made and evidenced as to be understood ; and clerical and ministerial duties, also, the observance or non-observance of which do not injuriously affect the tax-payer, are merely directory.

2.   *Same ; presumptions in favor of regularity.*—In passing on the validity of proceedings for the assessment of taxes, the courts will indulge every reasonable intendment in favor of their regularity ; but, in the matter of the assessment of taxes by municipal corporations, the intendments are less liberal.

3.   *Assessment of railroad property ; apportionment by auditor.*—Under the revenue law of 1868, which, so far as regards the assessment of the property of railroad corporations, continued in force up to and during the year 1874, the

provision contained in the 26th section, that the auditor shall not apportion the values among the several counties through which the railroad runs, until the equalization shall have been made by the board appointed for that purpose, is mandatory, and any apportionment made prior to such equalization is null and void.

4. *Same ; board of equalization ; time of meeting, and proceedings of.*—The provision contained in the 26th section, requiring the board of equalization to meet at the office of the auditor on the 3d Wednesday in May annually, for the purpose of transacting their official business, is merely directory as to the day of meeting : the statute contemplates *ex-parte* proceedings by the board, making no provision for contests before them by the parties interested, and is not unconstitutional on that account. (SOMERVILLE, J., *dissenting.*)

5. *Same ; record of proceedings of board ; secondary evidence of contents.*—The provision, also contained in said 26th section, requiring the board of equalization to "keep a record of their proceedings, " is mandatory, and such record is a condition precedent to a valid assessment and apportionment ; but, to constitute a record, it is not necessary that the proceedings should be kept in a book : a writing, or written memorandum, is sufficient ; and upon proof of its loss, or destruction, secondary evidence of its contents may be received and acted on.

6. *Same; signing record by members of board; presumption in favor of proceedings.*—The provision, contained in the same section, that the record of the proceedings of the board "shall be signed by all the members present," is mandatory ; but, when the minutes show that all the members of the board were present when they commenced business, and yet the record is signed by only two of them, the courts will indulge the presumption that the third had retired before the business was finished, the remaining members being a quorum.

7. *Same; report of railroad officials.*—The 24th section of the statute requires the president and secretary of each railroad company to report annually to the auditor, under oath, the total length of their road, and its total length in this State, with the value thereof, including right of way, road-bed, side-track, and main track, and also the total length and value thereof in each county, together with the number and value of all engines, cars, and other rolling-stock. The object of this provision was to obtain a basis for the apportionment of the railroad property between this State and any other State into which the road might run, and also for the apportionment of that part liable to taxation here among the several counties through which it runs. But the report of those officers is not conclusive on the auditor, nor is it a condition precedent to a valid assessment and apportionment by him.

8. *Same; auditor's duties and powers in matter of assessment.*—Under the provisions of the statute, the auditor is the assessor of the property of railroads, and there can be no valid apportionment until he has made the assessment. He has no authority to assess back taxes, or the omitted taxes of former years ; but he may at any time certify to the county assessor the ascertained value of the railroad track in the county, and the proportionate value of the rolling-stock, when the facts have been so ascertained, and shown by legal evidence, that he can determine this proportionate value by a clerical calculation, which is a mere ministerial act, and has nothing judicial in it.

APPEAL from the City Court of Montgomery.

Tried before the Hon. JOHN A. MINNIS.

This case originated in a petition filed by Jackson county, a corporation under the statute (Code, § 815), addressed to Hon. WILLIS BREWER, then State auditor, asking him to certify to the county assessor of said county, from the records and *data* in his office, the number of miles of railroad, main track and side-tracks, belonging to the Memphis and Charleston Railroad Company, which were liable to taxation for

county purposes in said county of Jackson, from the year 1870 to the year 1875, both inclusive, and the value of its personal property so liable to taxation for each of said years, as ascertained and determined by the State board of equalization each year, and preserved of record among the files of the auditor's office. The auditor refused to make any certificate as prayed, on account of the defects and insufficiency of the records and papers on file in his office; and the petitioner then applied to the presiding judge of the City Court of Montgomery, for a writ of *mandamus* to the auditor, commanding and requiring him to certify the facts as prayed. A demurrer to the petition was interposed, but was overruled; and an answer, or return, was then filed, to which a special replication was filed by the petitioner; and all defects of form being waived, by agreement, the cause was submitted for decision on the facts, as shown by the printed annual reports of the auditor, the proceedings of the board of equalization on file in his office, and the oral testimony adduced. Several exceptions were reserved by the respondent, to the rulings of the court on questions of evidence, which, so far as material, will be understood from the opinion of this court. On the evidence adduced, all of which is set out in the bill of exceptions, the City Court awarded a peremptory *mandamus* as prayed; and its judgment, to which an exception was reserved by the respondent, is now assigned as error, together with the other rulings to which he excepted. Brewer's term of office as auditor having expired, pending the appeal, the cause was revived in the name of his successor, Hon. Jesse M. Carmichael.

HUMES & GORDON, and H. C. TOMPKINS, Attorney-General, for appellant, made the following (with other) points :* 1. The apportionment and notice, prayed for by the petition, could only be made under the law which was in force when the tax became due, that is, the law of 1868, which was expressly repealed by the revenue law of 1875; and the proviso to the latter law, if it can have any application to such a case as this, being omitted from the Code of 1876, is also repealed. *Dane v. McArthur*, 57 Ala. 448; *Bales v. The State*, 63 Ala. 60. That the repeal of a tax law, before the collection of the tax, puts an end to the tax itself, see Cooley on Taxation, 14, and authorities cited.

2. If the law of 1868 is held to be still of force, it does not authorize the apportionment now of railroad property which escaped apportionment during the years for which

---

* The arguments in this case, written and printed, were very full and elaborate; and they have been greatly condensed, as here presented.—REP.

taxes are now claimed. The statute enumerates with great particularity the different steps in the proceedings necessary for the apportionment, assessment, levy and collection of railroad taxes, and · the order in which they must be taken; as to which, see sections 24, 33, 37, 96, 98, 99, 100, 101, 102, 103. These sections show that apportionment and notice are important steps in the proceedings, essential to the validity of the subsequent acts; and they must be taken during the tax year, before the time has elapsed for the performance of the subsequent acts. As to the apportionment and notice, the same principle must apply which was held applicable to the levy in the Perry county case; that is, as to back taxes, or taxes on property which escaped taxation in former years, "the authority can only exist by statute, and the statute has not conferred it."—*Perry County v. Railroad Company*, 58 Ala. 560-61. The statute no more expressly requires the levy to be made during the tax year, than the apportionment and notice, which must precede it; and the same rules of construction must be applied to each. *Mosley v. Tift*, 4 Florida, 402; *Barnes v. Doe*, 4 Ind. 132; Cooley on Taxation, 199-200; 29 Iowa, 385; 6 Neb. 241.

3. The several objections to the oral testimony offered were well taken. This evidence was of three classes, and offered for several purposes: 1st, to prove the mode of procedure adopted by the auditor and the board of equalization in reference to the assessment and equalization of the railroad taxes; 2d, to prove the loss of alleged records of the auditor's office, and their contents; 3d, to aid and supplement the record, by showing what was done in fact, although the record does not show it. As to these matters, the law required a record to be kept; and when a record is required to be made, no other evidence of the fact will be received. Burroughs on Taxation, 398; *Moses v. White*, 29 Mich. 59; *Farrar v. Fessenden*, 39 N. H. 268; *Parks v. Doe*, 20 Ala. 251; *Draughn v. Tombeckbe Bank*, 3 Stew. 54; *Carroll v. Pathkiller*, 3 Porter, 279. The evidences of records cannot depend on unofficial papers, and the oaths of individuals who have neglected or exceeded their authority.—*McCall v. Lounier*, 4 Watts, 351; *Miller v. Hale*, 26 Penn. 437; *Iverslie v. Spaulding*, 32 Wisc. 394; *Marsh v. Clarke County*, 42 Wisc. 502; *McCready v. Sexton*, 29 Iowa, 385; *Moore v. Newfield*, 4 Greenl. 44; Blackwell on Tax-Titles, 248.

4. A conclusive objection to the admission of this parol evidence is, that the petition asked a *mandamus* to compel the auditor to do certain things, and to certify certain facts, *from the records in his office*. If the records existed, and were sufficient, there was no necessity for extraneous evidence;

(10)

and if they were deficient, or were entirely wanting, that was a good reason for his failure to certify as asked, and a good reason for refusing the writ. If the *mandamus* should be awarded, is the auditor to certify the facts as established by the parol testimony? If the record once existed, and has been lost, it can only be substituted by a proper proceeding instituted for that purpose.

5. The law required the board of equalization to keep a record of their proceedings, and that the record should be signed by the members who were present. This is the evidence of authenticity which the law requires, and the provision is mandatory.—*Sibley v. Smith*, 2 Mich. 501; *Foxcroft v. Nevens*, 4 Greenl. 72; *Cobly v. Russell*, 3 Greenl. 227.

6. A *mandamus* should not be awarded, because there never was any valid assessment. An assessment, strictly speaking, is an official estimate of the sums which are to constitute the basis of an apportionment of a tax between the individual subjects of taxation within the district.—Cooley on Taxation, 258, and note on p. 259; Burroughs, 198, § 94. Applying this definition, an assessment under the law of 1868 consisted of several distinct and essential parts, or successive steps: 1st, the returns made to the auditor by the railroad officers, or, in their default, the ascertainment of the necessary facts by the auditor himself; 2d, the equalization and correction of valuations by the board; 3d, the ascertainment, by the auditor, of the total length of the road, the apportionment by him, and notification thereof to the county assessor; 4th, the entering of this by that officer on his rolls, or lists, as in case of individual tax-payers; 5th, the entering of that list in a book, and the delivery of the book to the probate judge, by the first Monday in July, for examination and inspection by all parties interested; 6th, and last, the examination and correction of this book by the county board of equalization, and their certificate. All these steps were necessary to a valid assessment, and were required to be taken in the order and within the time prescribed by the law; and the failure to take any one of them was fatal to the entire proceeding.—Cooley, 212–15, 259–60; *Thurston v. Little*, 3 Mass. 429; *Thayer v. Stearns*, 1 Pick. 482; *McCall v. Lounier*, 4 Watts, 351; *Miller v. Hale*, 26 Penn. 432; *Matter of Nichols*, 54 N. Y. 62; *People v. Hastings*, 29 Cal. 451; 10 Cal. 632; *Clark v. Crane*, 5 Mich. 151. The law requires, also, that the assessment shall be of record, and provides a mode of authentication.—Cooley, 256, 289; *Morrill v. Taylor*, 6 Neb. 241. The record must show a compliance with all these requisitions, and it can not be aided by presump-

[State Auditor v. Jackson County.]

tions, or evidence of extraneous facts.—*Jarvis v. Silliman,* 21 Wisc. 600 ; *Hall v. Kellogg,* 10 Mich. 139 ; 20 Ala. 251.

7. A *mandamus* should be refused for the further reason, that there never was any levy on this property by the Commissioners' Court of the county ; and it cannot now be supplied, since the law confers no express power to levy for escaped taxes of former years. This precise point was decided in the case of *Perry County v. Railroad Company,* 58 Ala. 560. No presumptions are indulged in favor of tax proceedings, but every thing must affirmatively appear ; the jurisdictional facts must exist, and must affirmatively appear before any subsequent steps in the proceeding can be sustained.—*Morrill v. Taylor,* 6 Neb. 241; 6 Wheaton, 125 ; *Thames Man. Co. v. Lathrop,* 7 Conn. 556 ; *Lowell v. Wentworth,* 6 Cush. 221 ; *Moses v. White,* 29 Mich. 59 ; *Farrar v. Fessenden,* 39 N. H. 268.

8. The proceedings of the board of equalization are null and void, and there could be no valid apportionment until after the equalization had been made as required. The board did not meet on the day specified in the law, and it had no authority to meet on any other day ; and it did not keep a record of its proceedings, as required by law. These provisions were mandatory, and the failure to comply with them renders their proceedings void.—Cooley on Taxation, 291 ; *Morrill v. Taylor,* 6 Neb. 241 ; *State v. Allen,* 43 Illinois, 456 ; *People v. Nicholls,* 49 Illinois, 517 ; *Darling v. Gunn,* 50 Ala. 424 ; *McKee v. Supervisors,* 53 Illinois, 477.

ROBINSON & BROWN, *contra.*—1. The levying of taxes by a city or county, for their support, is as much the exercise of the taxing power as when levied by the State for its support, as between corporations and individuals : the one cannot be exempt, and the other liable.—*Mayor of Mobile v. Stonewall Insurance Co.,* 53 Ala, 583. When a general power is given to a city to tax for its local purposes, it may tax any thing that may be taxed by the State ; or, if the subjects of taxation are enumerated, and no restraint is placed on the power, it may exercise it as fully as the State. While the law is construed strictly, in ascertaining what power has been conferred on municipal corporations, the power will be sustained in its integrity, and will not be destroyed or crippled by strained interpretations.—Burroughs on Taxation, 385.

2. The provision contained in the 26 section of the revenue law of 1868—" the apportionment herein provided for shall not be made until such equalization shall have been made"—is mandatory : the negative words render the action of the board a condition precedent to the apportionment.

[State Auditor v. Jackson County.]

But there is no other express negative in the statute, and none can arise by implication, on any reasonable rule of construction. This condition precedent having been performed annually, by the action for decision of the board at the time and place appointed by law, all the other provisions of the law are directory merely, and the acts and duties to be performed may well be done now. When a statute prescribes a time within which public officers are to perform official acts regarding the rights of others, it will be held to be directory merely as to third persons, and will not invalidate or prevent official acts after the expiration of that time, unless the nature of the act, on the spirit of the statute, forces a contrary conclusion.—*Comm'rs' Court v. Rather*, 48 Ala. 448. The same principle of construction is announced by numerous adjudged cases, and by approved text-writers.—See Cooley on Stat. Const. 78; Dwarris on Statutes, 222, note; *Walker v. Chapman*, 22 Ala. 116; *Savage v. Walsh*, 26 Ala. 629; 3 Mass. 234; 14 Barbour, 290; 3 Hill, N. Y. 46; 14 Cal. 148; 5 Geo. 524; 6 Wendell, 483; 10 Penn. St. 451; 24 Mich. 237; Cooley on Taxation, 212–13; 74 Penn. St. 400; 60 Penn. St. 464; 4 Neb. 336.

3. That there was an assessment of railroad property during these several years, is no longer an open question. *Perry County v. Railroad Company*, 58 Ala. 558–65. Independent of this decision, the fact is abundantly proved by the evidence in this case. The records were produced, when in existence; and their loss and contents, when not produced. That the contents of lost records may be established by parol, can not be doubted.—1 Greenl. Ev. § 509; Freeman on Judgments, §§ 407, 606, 419; *Lyon v. Bolling*, 14 Ala. 754; 39 N. H. 182; Cooley on Taxation, 248; Burroughs, 398. It was not necessary, as urged for appellant, to have the records substituted, or their defects supplied, by bill in chancery: on the contrary, such a bill could not have been maintained.—Freeman on Judgments, § 89a. Such a power inheres in courts of general jurisdiction, and pertains to them alone.—*McLendon v. Jones*, 8 Ala. 298; *Adkinson v. Keil*, 25 Ala. 551. As to the printed reports of the auditor, the court will take judicial notice of them as public documents.—1 Greenl. Ev. §§ 5, 91, 478, 482; 1 Whart. Ev. 317; 2 Phill. Ev. 105–9, 130, 144–5.

4. As to the years in which the record is not shown to have been signed by the members of the board, a presumption will be indulged in favor of the regularity of the proceedings, under the facts disclosed by the evidence.—Cooley on Taxation, 329–32. It is insisted, moreover, that this provision of the statute is directory merely, and the failure of

[State Auditor v. Jackson County.]

the officers to do their duty does not invalidate the tax. Burroughs, 396–98 ; 12 Wheaton, 84 ; *Bartlett v. Lang,* 2 Ala. 61 ; *Ex parte Owens,* 52 Ala. 473.

5.   In the matter of the levy by the county officers, it is shown that the Commissioners Court have discharged their duty ; and the county assessor can not perform the duties imposed on him by law, until he is furnished with the necessary *data* by the defendant.   As a ministerial officer, the defendant can not shield himself behind his predecessor's non-action, or neglect of duty.—10 Penn. 451 ; 31 Maine, 272 ; 8 N. Y. 330 ; 50 Penn. 408 ; 12 Iowa, 237 ; High on Extra. Remedies, 460, 491.

6.   On all the facts, the petitioner has shown a clear right to the relief prayed,. and a *mandamus* should be awarded. *Comm'rs v. Rather,* 48 Ala. 433 ; *Ex parte Grant,* 53 Ala. 17 ; High on Extra. Rem. 139, 143, 368 ; 3 Wendell's Blackst. 110 ; Cooley on Taxation, 514, 520 ; 5 Geo. 523 ; 8 N. Y. 318 ; 12 Iowa, 237 ; Burroughs, 369, 454.

STONE, J.—The present case comes before us in a form different from that presented in *Perry County v. S., M. & M. Railroad Co.,* 58 Ala. 546.   An application was made to the court below, for a *mandamus* to the auditor, directing and commanding him to complete and apportion the assessment of the Memphis and Charleston Railroad Company for the years 1870 to 1874, inclusive, and to notify the assessor of Jackson county " of the number of miles of track, and value thereof, and the proportionate value of personal property taxable" in said county.   The City Court of Montgomery granted the prayer of the petition, and awarded the writ of *mandamus.*   From that judgment the present appeal is prosecuted.   The question is thus raised, has the petitioner shown enough to authorize the relief prayed, either in whole or in part ?

It is contended before us, that in the assessment of the railroad valuations, and in the levy of the county taxes, many irregularities intervened, which render the proceedings void.   The question has been much discussed, what regulations for the levy and assessment of taxes are mandatory, and what are simply directory.   All directions given in the statutes, concerning the levy and assessment of taxes, ought to be substantially followed by courts and officers charged with the duties.   They would not be enacted, if this were not the intention of the law-making power.   " But the negligence of officers, their mistakes of fact or of law, and many other causes, will often prevent a strict observance ; and when the provisions which have been disregarded constitute

parts of an important, perhaps complicated system, it becomes of the highest importance to ascertain the effect the failure to obey them shall have on the other proceedings with which they were associated in the law."—Cooley on Tax. 213. In *French v. Edwards*, 13 Wall. 506, the Supreme Court of the United States said: "There are, undoubtedly, many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power, or render its exercise in disregard of the requisitions ineffectual. Such, generally, are regulations designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory, unless accompanied by negative words, importing that the act required shall not be done in any other manner or time than that designated. But, when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be, and generally would be, injuriously affected, they are not directory, but mandatory. They must be followed, or the acts done will be invalid. The power of the officer, in all such cases, is limited by the measure and conditions prescribed for its exercise."

In Burroughs on Taxation, 249, is the following summary: "Where the statute directs that the roll shall have a column for 'true value,' and one for 'reduced value,' but the roll contains only one column marked 'value,' or where there is no column for income, the assessment is valid. So, an irregularity in issuing the notice of the meeting of county clerks, who act as board of assessors, or the failure of tax officers to list all the property in their districts liable to taxation, or other irregularities and informalities which make the roll not in strict conformity to the requirements of the statute, are regarded as directory. Where a board of supervisors were required, at their June meeting, to add to the assessment any taxable property omitted by the assessor, it is said that such a requirement as to time is directory, and a correction at a later meeting, by which property is made to bear its due proportion of the public burden, is valid. But, if there had been any thing in the act to show that the legislature intended the time fixed as a limitation, it would have been invalid."

In *Torrey v. Milbury*, 21 Pick. 64, the court said: "In considering the various statutes regulating the assessment of taxes, and the measures preliminary thereto, it is not always easy to distinguish which are conditions precedent to the

legality and validity of the tax, and which are directory
merely, and do not constitute conditions. One rule is very
plain and well settled—that all those measures which are
intended for the security of the citizen, for ensuring an
equality of taxation, and to enable every one to know with
reasonable certainty for what polls and for what real and
personal estate he is taxed, and for what all those who are
liable with him are taxed, are conditions precedent; and
if they are not observed, he is not legally taxed, and he
may resist it in any of the modes authorized by law for con-
testing the validity of the tax. But many regulations are
made by statute, designed for the information of assessors
and officers, and intended to promote method, system and
uniformity in the modes of proceeding, the compliance or
non-compliance with which does in no respect affect the
rights of tax-paying citizens. These may be considered
directory; officers may be liable to legal animadversion, per-
haps to punishment, for not observing them; but yet their
observance is not a condition precedent to the validity of the
tax."

By a statute of the State of Michigan, property was re-
quired to be assessed for taxation at what the assessors be-
lieved to be the true cash value thereof, and the assessors
were required to authenticate the assessment-roll with a cer-
tificate to that effect. In *Clarke v. Crane*, 5 Mich. 151, the
certificate was: " We have estimated it" [the land in suit]
" at a sum which, for the purposes of assessing, we believe to
be the true value thereof." The word *cash* was left out. It
was ruled that this vitiated the assessment, and the sale made
for its payment. The court said: " The object of the cer-
tificate appears to be two-fold—to authenticate the assess-
ment-roll, and to secure equality in taxation; and with a
view to this object, the assessors are required to state in their
certificate, that they have assessed the property mentioned
in the assessment-roll at what they believe to be the true
cash value thereof. If this be the object,—and we can see no
other,—the tax-payer alone is interested in this part of the
law. It is for his protection. . . He pays more or less
tax than he should pay, when his property is assessed at a
sum above or below its cash value." A former statute of
Michigan had required the assessors, after they had com-
pleted the assessment, to sign it, and also to attach to it a
certificate signed by them, &c. In *Sibley v. Smith*, 2 Mich.
486, the assessment was not signed by the assessors, but
there was a certificate signed by them. The court held that
the certificate could not supply the omission of the assessors
to sign the roll itself, and that for want of such signature the

assessment was void.—See, also, *Thames Man. Co. v. Lathrop*, 7 Conn. 550 ; *Keene v. Houghton*, 19 Me. 368 ; *Blossom v. Cannon*, 14 Mass. 177 ; *Johnson v. City*, 21 Wisc. 184.

The following authorities are not in harmony with this view : *Van Rensselaer v. Whitbeck*, 7 Barb. 133 ; *Mills v. Gleason*, 11 Wisc. 470 ; *City of Davenport v. Railroad*, 38 Ill. 633 ; *Buck v. People, ex rel.*, 78 Ill. 560. In *Van Rensselaer v. Whitbeck*, the court said : "If the assessors have performed their duty in making the assessment-roll, as they may be presumed to have done, the certificate amounts to nothing more than a solemn declaration on their part, that they have performed such duty. It forms no part of their adjudication, upon which the action of the board of supervisors is to be taken. It is but the evidence of what the assessors have done, and therefore, it seems to me, would not, even in a direct proceeding bringing in question the validity of the assessment, be subject of review. At any rate, the entire want of such certificate, much less the omission of the assessor to adopt the form prescribed in the statute, could not invalidate a tax charged by the board of supervisors upon the persons and property specified in the assessment roll, if the assessment itself were in all respects conformable to law. The board of supervisors is required to examine the assessment-rolls returned to them, for the single purpose of ascertaining whether the valuations of real estate, in one town or ward, have a just relation to those in the other towns or wards in the county ; and if they do not, the board is authorized to change such valuation, so as to produce such relation."

In *Mills v. Gleason, supra*, it was said : "It is also objected, that the assessors did not meet for the purpose of hearing objections, as required by the charter. . . We shall attempt to determine what would be the effect of an entire omission of this meeting by the assessors. It is undoubtedly a matter of much difficulty, both upon principle and upon authority, to determine with what degree of strictness the directions of the statute in regard to taxation must be followed, in order to prevent the entire tax from being illegal. On the one hand is the evil of illegal and oppressive taxation upon the citizen; and on the other, the danger of defeating entirely the collection of the public revenue, by the neglect or omissions of the officers to whom it is intrusted. Perhaps, the only method of solving the difficulty would be, to hold that no objection which did not go to the very ground-work of the tax, so as to affect materially its principle, and show it must necessarily be illegal, ought to have the effect of rendering the whole invalid. . . But,

[State Auditor v. Jackson County.]

when the objection is a mere non-compliance with some direction of the statute, notwithstanding which the tax may have been entirely just or equal, it ought not to have that effect."

In Hilliard on Taxation (ch. 1, § 78), it is said : " Upon the question, whether the taxing power, and the forms and proceedings by which it is exercised, are, in doubtful cases, to be construed in favor of the government or the citizen, it is held that a tax is to be presumed to have been properly levied, and that taxation for public purposes is to be construed liberally. . . The operations of government can not be carried on without the expenditure of money, and that expenditure must be supplied by taxes, collected from its citizens. The power to tax is, therefore, inherent in government. From the very nature of the case, such a power is supreme."

In *Buck v. People, ex rel.,* 78 Ill. 560, it is held : " It will be presumed that taxes are properly and legally assessed, and are legally and justly due, in the absence of proof to the contrary." In that case it was said : " All of the objections in this case are merely technical, and devoid of merit. There is no pretense that the property of objectors is not liable to be rated, nor that they are unfairly or unjustly assessed ; nor do they claim that a greater rate is imposed upon them, than on other citizens of the district ; nor that the amount levied is not indispensable to the county and township governments, the keeping of roads and bridges in repair, and for the maintenance of schools, and the preservation of order in the villages of the county."

We have quoted thus elaborately from text-writers and adjudged cases, to show the general drift of judicial determination on the question in hand. We concur in opinion with the Supreme Court of the United States, that those legislative directions which have for their object the protection of the tax-payer against spoliation, or excessive assessment, must be treated as mandatory. But, if there be enough to show that the assessment is so made and evidenced as to be understood, then regulations designed for the information of the assessor, or other officer, intended to promote dispatch, method, system and uniformity in modes of proceeding, are merely directory. So, clerical and ministerial duties, the observance or non-observance of which do not affect the tax-payer injuriously, must be classed as directory. In cases of taxes imposed by municipal corporations, the intendments are less liberal.—*Lott v. Ross,* 38 Ala. 156.

Sections 24 to 26, inclusive, of the act approved December

[State Auditor v. Jackson County.]

31st, 1868 (Pamph. Acts, 307–8–9), provide for the assessment of railroads in this State for taxation. Section 24 requires an annual report to be made to the auditor of State by the railroad officials, showing " total length of such railroad, the total length and value of such road, including right of way, road-bed, side track and main track in this State, and the total length and value thereof in each county, city, and incorporated town in this State ; they shall also make return of the number and value of all their locomotive engines, passenger, freight, platform, construction and other cars ; and the value thereof shall be apportioned by the auditor, *pro rata*, to each mile of the main track ; and the auditor of State shall notify the assessors of each county, through which such railroad runs, of the numbers of miles of track and value thereof, and the proportionate value of personal property, taxable in their respective counties." Section 25 provides how these returns are to be made of roads in the hands of receivers ; and then directs, if the returns provided for above are not made " on or before the last day of April annually, the auditor shall proceed to ascertain the values herein required, from the best information he can conveniently obtain," &c. Section 26 : " That the auditor of State, treasurer of State, and secretary of State, shall constitute a board of equalization, a majority of whom shall constitute a quorum for the transaction of business, who shall meet at the office of the auditor of State in Montgomery, on the 3d Wednesday of May annually, and equalize the property of railroad companies whose roads are wholly or partially in this State, as returned to the auditor of State under the provisions of this act, by increasing the value of the roads and property of such companies as shall have been, in their judgment, returned at too low a valuation, and diminishing the value of such as may have been returned at too high a valuation. They shall keep a record of their proceedings, which shall be signed by all the members present, and deposited with, and kept by the auditor of State. . . The apportionment herein provided for shall not be made, until such equalization shall have been made."

The act approved February 9th, 1870 (Pamph. Acts, 87), we have heretofore declared to be unconstitutional.—*Perry Co. v. R. R. Co.*, 58 Ala. 546. We might have given another reason for our opinion, equally as satisfactory. It is not within the constitutional power of the legislature to relieve private corporations from the payment of a tax, the burden of which rests on private individuals.—Const. of 1868, Art. 13, sec. 4; Const. of 1875, Art. 11, sec. 6; *Mayor &c. v. Stonewall Ins. Co.*, 53 Ala. 570. In that case we said :

"When the legislature provides for taxing the property of individuals, this clause of the constitution requires it to tax the property of corporations for pecuniary profit to the same extent, and for the same purposes." See, also, *City of Davenport v. R. R. Co.*, 38 Iowa, 633; *City Council of Montgomery v. Gas-Light Co.*, at the present term. In the revenue law approved March 19, 1875, sections 21, 22 and 23 (Pamph. Acts, 14, 15), reenacted, *verbatim*, sections 24–5–6 of the act approved December 31, 1868. So that the sections of the revenue law of 1868, so far as they relate to the assessment of railroads for taxation, were of force during all the time material to be inquired of in the present case.

We do not hesitate to declare, that many of the provisions of the revenue law copied above were intended merely as guides to the officers charged with the duty of assessment,—intended to secure system, uniformity and dispatch in the discharge of this trust. The tax-payer can not be injuriously affected by compliance or non-compliance with these directions. Hence, they are classed as directory, in contradistinction to other clauses styled mandatory, or conditions precedent, as Ch. J. Shaw phrases it; mandatory, because they are designed to protect the tax-payer against unjust assessment and spoliation. Each class, it is the duty of the assessor to observe and obey; but a failure to conform to those falling within the first class, does not invalidate the assessment, while a non-observance of the mandatory duties renders it wholly void. It is our duty, as we have shown above, to indulge every reasonable intendment in favor of regularity, in assessment for State taxation, rather than paralyze this motive power of the State's machinery.—Hilliard on Taxation, 36, § 78; Cooley on Taxation, 329.

Among the many directions in sections 24–5–6 of the revenue law of 1868, given for the guidance of railroad officials, the auditor, and State board of equalization, we are satisfied that none of them are made conditions precedent, unless they are the following. In section 26 it is said, the auditor shall not apportion the values among the several counties, until the equalization shall have been made. This is mandatory, and, if disobeyed, will avoid the tax. The same section declares who shall constitute the State board of equalization, and directs that they shall "meet at the office of the auditor of State in Montgomery, on the 3d Wednesday of May annually." Has the tax-paying railroad an interest in having this meeting take place on the very day named in the statute? and will such corporation be liable to be injuriously affected, if the meeting take place on a different day? This

must depend on the powers of the board when assembled, the purpose of the meeting, and, mainly, their duty *vel non* to furnish to the officers of the railroad company the right and privilege of appearing before them. If it is intended that the proceedings shall be *ex parte*, then, whether the meeting be held on the day mentioned in the statute, or on any other day, can not injuriously affect the tax-payer. The tax-paying railroad has first had the privilege and opportunity, through its highest and most trusted officers, of describing its property, and fixing upon it its own estimated values, under solemn oath. The powers of the board of equalization are what its name imports; to " equalize the property of railroad companies, . . . as returned to the auditor of State under the provisions of this act, by increasing the value of the roads and property of such companies as shall have been, in their judgment, returned at too low a valuation, and diminishing the value of such as may have been returned at too high a valuation." It will be observed that this language only speaks of *equalizing* the valuations, by either increasing or diminishing the sums shown in the sworn return of the officers. Equalization of assessment and burdens is the aim of this enactment. Not a word said about having the tax-payers before them, hearing complaints, or of receiving testimony. This trust is confided to high executive officers of the commonwealth, who are presumed to be impartial arbiters in the premises; and we do not think it was contemplated by the legislature, that complaints, remonstrances, contests or trials should be had before them. They were to equalize—adjust the burdens equally—and the high official character and oath of the members of the board were esteemed a sufficient guaranty of faithful and impartial performance. We do not consider the *time* of the meeting of the State board of equalization as mandatory.—*Commissioners of Limestone County v. Rather*, 48 Ala. 433.

The State board of equalization " shall keep a record of their proceedings, which shall be signed by all the members present, and deposited with, and kept by the auditor of State." There can be no doubt that the injunction to keep a record of their proceedings is mandatory. Official action, such as this, should never be confided to so treacherous a custodian as human memory. It must be recorded. A record is a writing or memorandum made to preserve knowledge and remembrance of a transaction. It may be enrolled on parchment or paper, or written in a book. The proceedings of the courts of England were preserved in parchment rolls. Our acts of legislation are not recorded in books, but are enrolled on paper, and in this form preserved in the

archives of State. When they are printed, if a discrepancy is discovered between the written "roll" and the printed copy, the former prevails over, and corrects the latter. So, we do not think it was or is indispensable that the proceedings of the board of equalization should be recorded in a book. When completed, and deposited with the auditor, the board of equalization has finished its work.

"Shall be signed by all the members present." This was evidently intended as a means of authentication, and a guaranty that the record contained the true finding and determination of the board. It is the evidence which the statute requires, for the protection and safety of the tax-payer. We hold that this is mandatory, and a condition precedent to the right of the auditor to apportion the values between the several counties, which the statute declares shall not be done until the equalization shall have been made.—*Clark v. Crane*, 5 Mich. 151; *Sibley v. Smith*, 2 *Ib.* 486.

Some of the records of equalization were imperfect when made and filed, in the omission of the signatures of the officers of the board of equalization. This is fatal to all the assessments found in that condition. The records of the equalizations, which were not recorded in a book, after being deposited with the auditor, are not now in that office. The testimony shows they were used as *copy* in printing the annual reports of the auditor, and were then permitted to perish. We need scarcely say this was unauthorized. They were records, and should have been preserved. But, if sufficient when made and filed, their destruction has not destroyed their efficacy, if the contents can now be established by proof. Parol testimony, if clear and satisfactory, is competent and sufficient to establish their existence, loss, and contents.—1 Greenl. Ev. § 509; *Smith v. Wert*, 63 Ala.

Recurring to the statute, and to the duty of the president and secretary of railroads thereunder, we find it is made their duty, annually, in the month of April, to report to the auditor, *first*, " the total length of such railroad." The purpose of this is shown farther on in the statute. It is, to enable the auditor to apportion the taxable value of the rolling stock—" locomotive engines, passenger, freight, platform, construction and other cars "—between the several counties, &c., in this State, through which the railroad passes. Rolling-stock pertains to the whole road,—runs, or may run, the whole length of it, and belongs to no one section more than another. If the railroad extends beyond our boundaries, into another State, the rolling-stock belongs equally to that part of the road which is within this State, and to that part which is without the State. The jurisdiction into which the

road runs, after leaving our State, has the same claim and right to derive revenue from such rolling-stock, that this State asserts. Hence, our legislation is so shaped, as to assess for taxation only that per-centage or proportion of the rolling-stock, which the number of miles of the main track of the railroad which is in Alabama bears to the whole length of the railroad, from one terminus to the other ; and, for purposes of taxation, we apportion the value of the entire rolling-stock of the road between the several counties through which it passes, according to the same rule. This renders it necessary, to a correct assessment of the rolling-stock, that the value of all that is employed on the railroad, and the length of the entire main track of the road, shall be ascertained.

The next duty required of the president and secretary is, that their report shall show " the total length and value of such road, including the right of way, road-bed, side track and main track in this State, distinguishing the total length and value thereof in each county, city, and incorporated town in this State." The purpose of this requirement was, that a basis of apportionment among the several counties might be obtained, as affecting the assessment of the right of way, road-bed, side track and main track. This report is not, in its nature, conclusive, either as to length of track, or value. Neither is the making of such report an indispensable condition precedent to the assessment of the taxable values, and their apportionment; for, if the officers of the railroad fail " to make the returns required,     .     .     .     to the auditor of State, on or before the last day of April annually, the auditor shall proceed to ascertain the values herein required, from the best information he can conveniently obtain ;" and the statute then proceeds to declare, that the auditor shall " apportion the same among the several counties, cities and incorporated towns, through which such roads run, in the manner hereinbefore provided." It will thus be seen, that the statute has conferred very ample means and power for assessing that part of the property of railroads, which it is made the duty of the president and secretary to report annually to the auditor.

In the case of *Perry County v. Railroad Company*, 58 Ala. 546, we said, " Sections 24 to 28 of the act [of 1868] relate to railroads and telegraph companies ; and the provisions in regard to these are entirely different [from the provisions which pertain to other and general subjects of taxation]. As to these, the assessor has nothing to do with the sworn list of the tax-payer, nor in the matter of fixing the values. These duties are confided to the auditor,

who is to notify the assessor thereof. The assessor, it is true, is required to assess the local property of the railroad in his county; but of the road proper, and its rolling-stock, he has nothing to do with the assessment. He simply assesses, and adds the other *local* property, to the assessment which has been made and furnished to him by the auditor." We, in the same case, said: "A law which levies a tax, and provides for its assessment, will not justify the collection of the tax until the assessment has been first made. . . There must be an assessment, either made pursuant to the levy, or adopted as the basis of the levy, else there can be no lawful collection of taxes;" and we cited authorities in support of these views.

In Burroughs on Taxation, § 94, it is said: "The assessment ascertains what persons and property are liable under the tax bill, the value of the property, and the amount of the tax, to be paid by each person·to the State." Section 95: "The assessment is usually, and almost universally, made a matter of record. This record is called the roll, or list. This roll contains the names of the persons taxed, the amount of the poll-tax, a description of the personal property owned by each person, the value of it, and the amount of the tax; a description of the land owned by each person, the number of acres, the situation and the value, with amount of tax, and the total amount of tax assessed upon each person for all the property listed." And in section 96 this author says: "The proper description of property on the roll is of the first importance; for, if it is not sufficiently described, all the subsequent proceedings for the collection of the tax are invalid."

In Cooley on Taxation, 258–9, it is said: "This [assessment] is always requisite, when the taxes are to be levied in proportion to an estimate, either of values, of benefits, or the results of business. . . Of the necessity of an assessment no question can be made. Taxes by valuation can not be apportioned without it. Moreover, it is the first step in the proceedings against individual subjects of taxation, and is the foundation of all which follow it. Without an assessment they have no support, and are nullities. It is, therefore, not only indispensable, but in making it the provisions of the law under which it is to be made, must be observed with particularity." This is supported by numerous authorities, cited by the author. In Hilliard on Taxation, chap. 10, pp. 290–1, it is said: "Assessment is defined as the making out of a list of property, and fixing its valuation or appraisement. . . Assessment is so far an inseparable incident to taxation, that no right of action arises until a legal assessment is made. . . So, a payment of money as

taxes on property before the assessment, and the collector's receipt therefor, are no legal discharge of taxes subsequently assessed thereon."

In the case of *Perry County v. Railroad Co.*, 58 Ala, 546, we declared that, as the record was then presented, no taxes had been assessed on the railroad for the years 1870, 1871, 1872, 1873, 1874; that the power to assess back, or omitted taxes, was statutory; and that there was no statute authorizing the assessment of railroads and their rolling-stock, for back taxes, or taxes of previous years, which had been omitted in assessment. That case originated in a petition to the Chancery Court, praying that the receiver, in whose hands the road had been placed by a decretal order of the court, be ordered to pay the taxes alleged to be due from the railroad for the years from 1869 to 1874, inclusive. The petition set forth that the taxes for the year 1869 had been properly assessed as State taxes, on a valuation of $202,-515.60 at three-fourths of one per-cent; that the court of county commissioners of Perry county had thereupon levied a county tax on said railroad for that year, which amounted to $1,291.03, which was not paid, in consequence of the enactment of February 9th, 1870, attempting to amend section 24 of the act of December 31st, 1868; and that said enactment of February 9th, 1870, was unconstitutional and void. According to the averments of the petition, all the steps required by the revenue law of 1868 had been taken in the assessment and levy of taxes on that railroad, for the year 1869. Nothing remained to be done, but to enforce the collection of the taxes. The averments of the petition relating to the taxes of 1870–74, inclusive, were as follows: "And petitioner further states and shows, that a similar or like tax became due and payable from said railroad corporation, for and during each of the succeeding years 1870, 1871, 1872, 1873, and 1874, but which was never assessed or paid, and is still due and unpaid to your petitioner." Hence we said in that case, "it is shown by the averments of the petition that no county tax was levied for the years 1870, 1871, 1872, 1873, 1874." Levy of county taxes succeeds assessment for State taxes, and the petition in that case showed there had been no levy or payment of county taxes for those years.

The record before us shows, that in April in each of the years 1870 to 1874, inclusive, the officers of the railroad made their sworn report to the auditor of State, setting forth all that was required of them by law, except that in neither of said reports is "the total length of the railroad" given. These reports were filed, and remain on file in the auditor's office. The record also shows, that these reports

were annually laid before the board of equalization, and the
board proceeded to pass upon the matter of equalizing the
values, but not on the third Wednesday in May. The meet-
ing for 1870 was on July 28. A record was kept of the
equalizations made at this time, raising the value of the
main track of the M. & C. Railroad from $7,500 per mile, at
which it was returned, to $10,000 per mile. "Value of 1st
class passenger cars M. & C. R. R. be increased to $2,000
each. . . Baggage cars : all valued over $1,000 to be re-
duced to $1,000 each, and those valued less than $1,000 to
$800 each. . . Freight cars valued at $600 each on all
the roads. . . The other rolling-stock of the various
roads to be valued as per returns from the companies." The
report had shown the number and description of rolling-
stock, with values annexed, and total length of miles of main
track and side track ; but failed to show the number of miles
of either in Jackson county. The proceedings of the board
of equalization for this year were signed by all the members
of the board. The foregoing is all that is shown in refer-
ence to equalization or apportionment in 1870, except that
the auditor's printed report shows—

Total length main track.................. 155 2-10 miles.
    "        "     side track.    ..... ...... 8 8-10     "
    "        "     main track, Jackson County... 40 9-10  "
    "        "     side track .................. 2 5-10   "
Valuation, whole track, equalized.......... $1,835,000
    "        rolling-stock ..."·····.......... 253,050

In reference to the printed reports of the auditor, the tes-
timony was as follows : Tables were made in the auditor's
office, by the clerks, showing the values of the several rail-
roads and their rolling-stock, as fixed by the board of equal-
ization ; and these were deposited in the auditor's office ;
but they were not signed by the members of the board.
These tables were handed to the printer, to be used as *copy*
in setting up the types to print the reports, and were not
afterwards preserved. The original manuscript tables are
lost, or destroyed, but the printed tables have been pre-
served in the auditor's office, and are correct copies of the
originals, as originally made out and filed. The proof is that
this method was pursued in each of the years, up to, and
including the year 1874.

The reports made by the railroad officials to the auditor,
in each of the years 1871-2-3-4, showed the whole length
of main and side track in Alabama, with the value of each,
description and value of all the rolling-stock, and length and
value of main and side track in Jackson county. The audi-

tor's book of record shows nothing of equalization in 1871. The auditor's printed report shows total length of main track, 155 2-10 miles ; side track, 8 8-10 miles ; value main track, Jackson county, $613,500 ; side track, $25,000 ; rolling stock, $80,060. These for Jackson county. No proof that any record of this was signed by the members of the board of equalization, and no record that the board met this year.

There is a record of the meeting of the board in 1872, which shows that all the members were present, and raised the valuation of the Memphis and Charleston railroad, main track, from $7,500 to $14,000 per mile ; side track increased to $9,000 per mile ; and fixed the value of the several classes of rolling-stock. This signed by two members of the board, and by the secretary. Report of the auditor shows main track, 155 2-10 miles, at $14,000 per mile ; 8 8-10 miles, at $9,000 per mile ; total value, rolling-stock, $294,900. For Jackson county ; main track, 40 9-10 miles, $572,600 ; side track, 2 5-10 miles, $22,500 ; and rolling-stock, $77,715.24. These all equalized values.

The statute requires, that the board of equalization shall keep a record of their proceedings, which shall be signed by all the members present. It is shown above that, when the board entered upon its duties in 1872, all were present, and yet only two of their three names are signed to the record. Two, a majority of the members, constitute a quorum, and are competent to decide all questions that come before the board. The making and signing a record of their proceedings is an official duty, which the law casts on these officers— a duty covered by their official oaths—and it is a presumption of law that sworn officers do their duty. We feel bound to presume, in support of the correctness of their conduct, that before their labors were completed, one of the members absented himself, and that the record was in fact signed by all the members present.

The record, or rather the absence of a record, for the year 1873, leaves the subject of assessment and equalization for that year, in the condition the tax for the year 1871 was left in, with the exception that there is no ascertainment of the proportion of miles, values, or rolling-stock, which belong to Jackson county. All we can learn is contained in the auditor's report, which shows the following, and only the following, as the equalized values : Whole length, main track, 155 2-10 miles, at $14,000 per mile ; whole length, side track, 8 8-10 miles, at $7,500 per mile ; total value, rolling stock, $284,000.

The year 1874 is in precisely the same condition as the year 1873. True, the record book in the auditor's office

shows that the board of equalization met and adjourned; but it shows nothing of what they did, and is not signed by either of the members of the board.

In *Perry County v. S., M. & M. R. R. Co.*, we declared, that the auditor of State is the assessor of railroads proper and their rolling-stock, for taxation. True, the board of equalization, of which he is a member, aid him in fixing the values. But on him is devolved the duty of receiving the returns, and of apportioning the assessment among the several counties. Assessment, in this connection, means the ascertainment and determination of the number of miles and value of the main track and of the side track, and the description and valuation of the rolling-stock. Then, the number of miles of track in each county fills up the measure of information,—the ascertainment of all the material facts, involved in assessment. All else is mere arithmetic. These facts being determined, the share of the burden which pertains to each county is, in legal effect, ascertained; for *id certum est, quod certum reddi potest.* While we find no authority the law confers on the auditor to assess back or escaped taxes, and think there is a want of machinery in the law to enable him to do so, we hold he is not without power to certify at any time, to the county tax-assessor, the ascertained value of the track of the road in his county, and the proportion of the value of the rolling-stock which is subject to tax in his county. And if the facts have been so ascertained, and shown by legal evidence, that by mere calculation he can determine the proportion of values that may be liable to taxation in any given county, this mere clerical function he can perform at any time. There is nothing judicial in this. It is scarcely necessary to add, that the duty the statute requires of the auditor, to "notify the assessors of each county, through which such railroad runs, of the numbers of miles of track and value thereof, and the proportionate value of personal property taxable in their respective counties," is purely ministerial, and may be performed at any time.

Under the principles here declared, petitioner was and is entitled to relief for the taxes of the years of 1870 and 1872. As to the other years named, no relief can be granted on the facts shown. The judgment of the City Court is reversed, at the cost of the appellee, so far as the costs of appeal are concerned.

The writ of *mandamus* is ordered, commanding the auditor, Jesse M. Carmichael, in whose name this appeal is revived, to certify to, and notify the tax-assessor of Jackson county, for the tax years 1870 and 1872, of the numbers of

miles of track and value thereof, of the Memphis and
Charleston railroad, and the proportionate value of personal
property taxable in said county.

NOTE BY REPORTER.—The appellant's counsel applied by
petition for a rehearing in this case, and, in support of their
application, submitted a printed argument on two points,
citing authorities, as follows:

1. The law requires, as a basis of the apportionment
sought to be made, that the total length of the road, both
within and beyond the limits of this State, shall be ascer-
tained by the auditor ; and the apportionment can not be
made, until this essential fact is first ascertained : without it
there can be no valid assessment. Any apportionment made
by the auditor, in the absence of this fact, would necessarily
be conjectural, and, of course, without foundation in law or
in fact. The court, in the opinion delivered, recognizes the
fact of this important omission ; and the appellant asks that
the necessary conclusion may be drawn, and the whole
assessment of the rolling-stock, &c., be held invalid. In this
connection, the following authorities are relied on :  *Thames
Man. Co. v. Lathrop,* 7 Conn. 550 ; *D'Antignac v. City Coun-
cil of Augusta,* 31 Geo. 700 ; *Philadelphia v. Miller,* 49 Penn.
449 ; *McCall v. Lorimer,* 4 Watts, 351 ; *Thatcher v. Powell,*
6 Wheaton, 119.

2. The most important point in the case, a reconsider-
ation of which is asked, is solely a legal proposition—whether
the provision of the statute, contained in the 26th section,
which says that the board of equalization, therein provided
for, " shall meet at the office of the auditor in Montgomery,
on the third Wednesday of May annually, and equalize the
property of railroad companies," &c., is mandatory, or only
directory ; and this involves the further question, whether it
was intended that the proceedings of the board should be
*ex parte,* without notice to the parties to be affected by their
action, and without an opportunity to be heard. On the first
argument of the case, it was assumed that this provision was
mandatory ; and it was understood to be conceded, in effect,
by the appellee's counsel, in whose printed brief it was said :
" If they [that is, the board of equalization] increase or
diminish the value, it is done in open day, at a time when the
tax-payer may be present, at a place fixed by law, where he
may be heard by himself or counsel." It is submitted, with
respect, that if the provision is not mandatory—if the board
can meet at any time and place other than that designated
in the law, and fix the valuation of railroads, or other prop-
erty, without notice to the parties whose rights are involved,

[State Auditor v. Jackson County.]

and without giving them an opportunity to be heard—then the law itself is unconstitutional, because it deprives them of their property without " due process of law," in violation of the constitutional guaranty, " which is intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice."—*Bank of Columbia v. Okely*, 4 Wheaton, 234. See, also, Cooley on Const. Lim. 356.

In the matter of taxation, as said by Judge Cooley, " every person is liable to have a demand established against him on the judgment of others, regarding the sum which he should justly and equitably contribute to the public revenues." But he adds : " Moreover, the persons who make the assessment, lighten the burden upon themselves, in proportion as they increase upon others. In such proceedings, therefore, it must be a matter of the utmost importance to the person assessed, that he should have some opportunity to be heard before the charge is fully established against him ; and it would seem to be a dictate of strict justice, that the law should make reasonable provision to secure him, as far as may be, against partiality, malice, or oppression." Again : " We should say that notice of such proceedings, and an opportunity for a hearing of some description, are matters of constitutional right.  .   .   . It is not customary to provide that the tax-payer shall be heard before the assessment is made ; but a hearing is given afterwards, either before the assessors themselves, or before some court or board of review. And of the meeting of that court, or board, the tax-payer must in some manner be informed ; either by personal notice, or by some general notice which is reasonably certain to reach him ; or, which is equivalent, by some general law which fixes the time and place of the meeting, and of which he must take notice. All these provisions, being of vital importance to the tax-payer, must be regarded as compulsory, and a compliance with them as conditions precedent to any further step to charge him with a tax."—Cooley on Taxation, 265.  In support of these views of the eminent text-writer, and as illustrations of the principle stated by him, the attention of the court is invited to the following cases :  *Thomas v. Gain*, 35 Mich. 164 : *Philadelphia v. Miller*, 49 Penn. 440–48 ; *State v. Taylor*, 35 N. J. Law, 188 ; *State v. Parker*, 34 *Ib.* 352 ; *Nixon v. Ruple*, 30 *Ib.* 60 ; *Patten v. Green*, 13 Cal. 325 ; *Hambleton v. Dempsey*, 20 Ohio, 173 ; *State Railroad Tax Cases*, 92 U. S. 609.

So far as the provisions of the revenue law relate to the taxation of the property of individuals, these principles are recognized, and it is provided, " with studied care and par-

ticularity of detail, that ample notice shall be given to the tax-payer, and opportunity afforded him to be present and be heard when taxes are assessed against him."—*Lehman, Durr. & Co. v. Robinson*, 59 Ala. 219. The property of corporations is, by constitutional provision, required to be taxed as the property of individuals.—Const. 1868, art. 13, § 4; Const. 1875, art. 11, § 6. Some difference in the details of assessment, as between individuals and corporations, was unavoidable; but the same general principles must apply alike to both : otherwise, the law would be partial in its operation, and, for that reason, unconstitutional.—*Vanzant v. Waddell*, 2 Yerger, 280; *Jones v. Perry*, 10 Yerger, 59. By construing this provision as mandatory, these constitutional objections are obviated, and effect is given to the whole law according to the legislative intention.

On a subsequent day of the term, in response to the application for a rehearing, the following opinions were delivered :

STONE, J.—The argument for a rehearing in this case is certainly able, and, on the main point, is strengthened by many citations. There is much contrariety of opinion in the adjudged cases, on the question when statutory provisions for assessing and collecting taxes are mandatory, and when they are simply directory. No amount of learning or logic can reconcile the various rulings. In some of the States, great strictness is required in the observance of statutory regulations; while in others, liberal intendments are indulged in favor of the correct performance of duties the law casts on the officials, to whom it confides this trust. Government can not exist without a revenue; and hence taxation is one of the attributes of governmental power, which even the sovereignty can not surrender. The preservation of peace and order, the repression of crime, the right to acquire and enjoy property, the protection of the weak against the strong and lawless,—all these are functions of government, whose very life and continued existence must depend on revenue—on taxation. All are alike bound to contribute, because all are alike protected. We agree with that class of decisions which presumes that sworn officers do their duty, and that taxes are levied and assessed according to law, unless the contrary is shown, or unless some mandatory provision of the law requires that some particular act or acts be affirmatively shown in the proceedings.—Hilliard on Taxation, ch. 1, § 78.

In our opinion heretofore delivered in this cause, we held that the revenue law of 1868, section 26, which fixes the time

when the State board of equalization shall meet and equalize the values of railroad property, was, as to the time of meeting, directory.  One argument by which we reached that interpretation of the legislative will was, that the statute makes no provision for the presence of persons representing the railroads—makes no provision for the introduction of evidence, or the trial of any controverted issue, and limits their powers to the matter of so changing the valuations of the property returned by the railroad officials, if necessary, as to equalize them.  In this section, as we have said, there is no provision for the presence of opposing interests, or for the trial of contested issues.  In the same statute, sections 97 to 100, are found the provisions for a county board of equalization.  In section 99 it is provided "that any person, feeling himself aggrieved by reason of the erroneous or excessive valuation, may appeal to the board of equalization for correction or abatement."  This evidently contemplates the presence of the tax-payer, or his right to be present.  It was, therefore, necessary for the county board of equalization to meet on the day mentioned in the statute, that the tax-payer might know when to appear and present his appeal against what he considered excessive valuation.  This provision is mandatory.  Why, we may ask, was this change of provision in the two sections of the same statute?  Why provide for a complaint, or presentation of grievance in the one case, and not in the other, if both are to receive the same construction?

Since the liability for the taxes claimed in this suit has accrued, the law in reference to the county and State boards of equalization has been changed in phraseology.  The provisions constituting the State board for equalizing the valuation of railroads and their rolling-stock are found in section 383 of the Code of 1876.  That statute, like the act of 1868, makes no provision for the presence of any one representing the railroads.  It directs the board to meet on the 3d Wednesday in April, and constitutes the governor president of the board.  But it provides that, if a quorum fails to meet on that day, the governor may appoint another day, and may make new appointments as often as may be necessary, until a quorum can be assembled.  It requires notice of the appointed days for meeting to be given to the other members of the board, but fails to require any other notice.  It is manifest that, under this statute, a meeting of the board may take place, and rightfully take place, of which no one save the members will have any notice.  There are other provisions of this statute which tend strongly to show the officers of the railroad are not expected to be present, unless

their presence is demanded by the board. Now, this statute, section 383 of the Code, is directory, under all the definitions and authorities.—*Commissioners of Limestone County v. Rather,* 48 Ala. 433. Would it not be strange, if we were to hold the language of the act of 1868 to be mandatory as to the time the board should meet, and the provision on the same subject in the act of February, 1877 (Code, § 383), to be only directory? Can it be that the legislature intended to effect this change? We think the legislature, in the added provisions found in the act of 1877, only gave a legislative interpretation of that part of the act of 1868, and that they had no intention of changing its character in this respect.

The differences between the State and county boards of equalization, under the later statute, are much more marked, than they were in the act of 1868.—See Code of 1876, sections 428 to 432. We might again ask, why this change, if attendance and contestation before the State board were contemplated.

We adhere to our former opinion, and overrule the application for a rehearing.

SOMERVILLE, J.—I am unable to concur in the opinion of the majority of the court in this case, or in the judgment refusing the application for a rehearing, and therefore respectfully dissent therefrom.

I am of opinion that the statute, which fixes the *time* and *place* for the meeting of the State board of equalization, is clearly mandatory, and not merely directory. It is, as it ought in justice to be, a matter of constitutional right, that every person, whose property is affected by the action of such a body, should have *notice*, either actual or constructive, of the time when, and the place where such meeting is to be constituted and held. To refuse arbitrarily the opportunity of personal presence to interested parties, would be a denial of that "due process of law" guaranteed by the constitution. *Mead v. Larkin,* at the present term. It can neither be intended, nor should it be tolerated, that such proceedings, which are *quasi*-judicial in their nature, should be conducted in secret deliberation, and *ex parte.* The owner of property assessed may be prejudiced by undue partiality in the matter of valuation, or by manifest errors of bad judgment, or even ignorance of fact or law on the part of the members of the board. Though the statute may secure no right of appeal in these cases to the tax-payer, it does not contemplate that he shall be remediless, for all such proceedings are subject to review by *certiorari.* This right might be rendered practically nugatory, if the meetings of this body could be held,

[Porter v. Smith.]

regardless of law, at another time and place than that designated, and without proper notice. "Such regulations for the protection of individual rights," as a learned text-writer and jurist forcibly observes, "are reasonable, and they are demanded by justice and general convenience. On general principles, they must be regarded as *mandatory*, and a strict observance of their provisions held to be essential."—Cooley on Taxation, 265; Cooley on Const. Lim. 356; Burroughs on Taxation, §§ 102, 141.

I think these views are sustained by ample and almost uniform authority, including both the text-writers and the adjudged cases.— *Thomas v. Gain*, 35 Mich. 164; *Philadelphia v. Miller*, 49 Penn. St. 440; *Hambleton v. Dempsey*, 20 Ohio, 173; *Lehman, Durr & Co. v. Robinson*, 59 Ala. 219; *Darling v. Gunn*, 50 Ill. 424; *State Railroad Tax Cases*, 92 U. S. 609; *Nixon v. Ruple*, 30 N. J. (Law Rep.) 60; *State v. Parker*, 34 N. J. (Law Rep.) 352.